Argued and submitted May 18, 1992, affirmed on appeal and on cross-appeal
June 16, 1993

In the Matter of the Marriage of

Suellen H. ADAMS,

*Respondent - Cross-Appellant,*

*and*

Gary B. ADAMS,

*Appellant - Cross-Respondent.*

(D8907-65106; CA A67089)

854 P2d 501

Jack L. Kennedy, Portland, argued the cause for appellant - cross-respondent. With him on the briefs were Susan E. Watts, and Kennedy King & Zimmer, Portland.

Jody L. Stahancyk, Portland, argued the cause for respondent - cross-appellant. With her on the brief were Robin R. Phillips, Stahancyk & Associates, Stephen B. Hill, and Hill, Huston, Cable, Ferris & Haagensen, Portland.

Before Richardson, Chief Judge, and Deits and Durham, Judges.

DURHAM, J.

## DURHAM, J.

Husband appeals and wife cross-appeals from a dissolution judgment. The parties dispute the trial court's finding regarding the value of their two corporations and the amount of the equalizing judgment granted to wife. Wife also challenges the denial of spousal support, attorney fees and costs. On *de novo* review, ORS 19.125(3), we affirm.

Husband, age 45, and wife, age 46, were married for 23 years. He had lymphatic cancer in 1977, but was cured. In 1984, his doctor discovered lung cancer, that is now in remission, but may recur. Husband also has a heart condition. Despite his health problems, he works full time. Wife is in good health and worked full time as a reading specialist during the 1989-90 school year. During the marriage, she was a homemaker and helped with the family businesses.

Husband is a lumber trader and manages Marketor Corporation (Marketor) and Marketor International Corporation (Marketor International). Each party owns 50 percent of the stock of the companies. Marketor International sells lumber products to buyers in other countries, primarily Japan. Marketor conducts the same business in the domestic market.

Marketor is a subchapter S corporation. Marketor International is a domestic international sales corporation (DISC). IRC § 991 *et seq* (1988). It does not pay corporate income tax, but passes its income through to its shareholders. They may defer paying income tax if they pay the interest on the deferred tax. Through December 31, 1989, the parties had deferred $397,158 in income tax.

In 1983, pursuant to a contract between husband, Marketor and U.S. Bancorp World Trade Company (World Trade), husband became a consultant to and then president of World Trade, and World Trade bought Marketor's intangible assets. Marketor retained its corporate form but terminated its lumber business activities. It received $13,600 per month for husband's consulting services and $173,000 annually when he became president. In 1985, husband left World Trade when he developed cancer. With wife's help, he re-established his business. She ran Marketor and Marketor

International from their home while he received cancer treatments. Although wife carried out the day-to-day business of the companies, husband remained actively involved in their operation.

In determining the value of the two corporations, the trial court found, contrary to the opinions of the parties' experts, that the companies had a combined value of $2,193,918. The court awarded husband the corporations and gave wife an equalizing judgment in the sum of $988,103.50. The parties do not dispute that the corporations are marital assets and that the presumption of equal contribution by the spouses applies. ORS 107.105(1)(f); *Stice and Stice*, 308 Or 316, 325, 779 P2d 1020 (1989).

Husband assigns error to the court's finding that Marketor and Marketor International had goodwill worth $675,000. It made that finding by multiplying the combined projected earnings of the corporations for 1990, which was $135,000, by a factor of five. Husband accepts using projected earnings to calculate goodwill but argues that the trial court should not have used that multiplier because his poor health, the yen-dollar exchange rate, the current state of the lumber industry and the businesses' dependency on his personal services diminish the goodwill value. His expert testified that goodwill equalled one year's projected earnings. Wife accepts the multiple-of-five formula but contends on cross-appeal that the trial court's goodwill figure is too low, because it erred in determining projected earnings.

A business ordinarily has some value above that of its assets, known as goodwill value. *See Hinrichs and Hinrichs*, 37 Or App 833, 588 P2d 130 (1978). We have on occasion declined to assign a goodwill value to a family business when the success or failure of the business depends on one party's personal services. *See Lankford and Lankford*, 79 Or App 742, 745, 720 P2d 407 (1986). Husband argues that his personal services were essential to his companies' success, and that his arrangement with World Trade demonstrates that.

The parties agree that these corporations have goodwill value. We agree with the trial court that husband plays a major role in the companies' profitability, and that they are

operating in an adverse business climate. However, other highly paid executives assist him in the business. In addition, his arguments regarding his health and the business climate do not explain why the court's formula produces an unreasonably high goodwill value. The formula is supported by parts of the experts' testimony, husband's bargaining history regarding goodwill, and the speculative effect of his health problems and market factors on profitability.

Wife's appraiser valued goodwill at five times earnings, but according to the court, he used an inflated projected earnings figure. The court applied that multiplier to husband's expert's projected earnings figure. In the 1983 negotiations to place a value on Marketor's "intangible" asset (*i.e.*, its earning power), husband rejected as too conservative World Trade's proposal to follow a five-times-earnings formula, and World Trade increased its offer from $250,000 to $375,000. Then, as now, he worked full time. If his health interferes with work at all, that may be attributable, according to his doctor, to his decision to continue to smoke two packs of cigarettes each day. The company has produced significant profits from year to year despite cyclical market uncertainties.

Wife argues that the court should have applied the multiplier to the figure for 1989 earnings, which was $475,000, rather than to husband's projection for 1990 earnings, $135,000, because the projection was too speculative. However, because the corporations were experiencing a downward business cycle, projected 1990 earnings provided a more accurate basis for determining goodwill than the prior year's earnings. We have considered the parties' challenges to the court's finding regarding goodwill and, on *de novo* review, we agree with that finding.

■ Husband next assigns error to the court's alleged failure to consider the parties' obligation for nearly $400,000 in deferred income taxes when it divided assets and liabilities. The court's division made him responsible for her one-half share of that liability. He argues that the court failed to deduct the debt from the value of the stock he received, with the result that she received a larger portion of the parties' assets. He also contends that he can pay the equalizing judgment only by pledging the assets or borrowing funds

from that corporation, and that those acts would violate tax deferral rules and cause all deferred taxes to become due and payable.

Husband has no present tax obligation, because the taxes on the DISC are deferred. Under DISC rules, he may continue to defer income taxes until he sells the corporation or withdraws its assets. The judgment does not require a sale of the corporation, and husband presented no evidence that he intended to sell it. We see no reason to reduce an asset's value by the tax effect of its sale when no sale is planned. *Olinger and Olinger*, 75 Or App 351, 356, 707 P2d 64, *rev den* 300 Or 367 (1985).

We are not convinced that husband will have to withdraw or pledge corporate assets to pay the equalizing judgment. Only the withdrawal of income in excess of the corporation's earnings would jeopardize the tax deferral. During the marriage, the parties frequently withdrew money from the corporation in the form of increased salary or bonuses. Those payments do not threaten the tax deferral. We see no reason why he cannot use those methods to raise funds to pay the judgment. Because we can only speculate about whether he will face any increased tax liability in paying the judgment, *see Alexander and Alexander*, 87 Or App 259, 261, 742 P2d 63 (1987), we conclude that the court did not err in refusing to reduce the value of husband's stock by the amount of wife's deferred tax liability.

Husband next assigns error to the court's alleged failure, in valuing the corporations, to consider the interest owed on the DISC-deferred income taxes for 1990 and his obligation to pay $67,500 in promissory notes to the corporations. The interest on deferred taxes is an ordinary operating expense, which the court considered in valuing the corporation and determining projected earnings. According to the evidence, the parties routinely borrowed money from the companies on promissory notes and paid it back from funds paid to husband in the form of year-end bonuses. Husband can follow that procedure for these notes. We reject this assignment.

In his final assignment of error, husband asserts that the trial court erred by awarding wife an equalizing judgment

of $988,103.50. He proposed two alternate methods of compensating wife for her interest in the corporations. However, his premise is that the court erred in dividing the assets and liabilities in the ways identified in his other assignments. We have rejected those arguments. His proposals reduce the assets available to wife, and do not merely reduce the tax consequences to him. *See Haguewood and Haguewood*, 292 Or 197, 209, 638 P2d 1135 (1981). On *de novo* review, we agree with the equalizing judgment ordered by the trial court.

■      On cross-appeal, wife argues that the court erred by excluding work-in-process when it valued the corporations. We accept husband's evidence that the work-in-process consists of unfilled orders that may not produce a profit. Because we can only speculate about whether and to what extent the unfilled orders will contribute to the corporations' profitability, the court did not err in declining to consider them.

■      Wife also argues that the court erred when it failed to award her spousal support. Relying on ORS 107.105(1)(d) and *Grove and Grove*, 280 Or 341, 343, 571 P2d 477, *mod* 280 Or 769, 572 P2d 1320 (1977), she contends that she should receive $2,000 per month in indefinite support, because the marriage was of long duration and husband's income is much greater than her own.

The purpose of spousal support is to provide for the disadvantaged spouse and to encourage economic self-sufficiency. *Moak and Moak*, 64 Or App 487, 491, 668 P2d 1249 (1983). The parties should be able to enjoy a standard of living not overly disproportionate to that enjoyed during the marriage. *See Nelson and Nelson*, 100 Or App 43, 46, 784 P2d 129 (1989); *Graf and Graf*, 97 Or App 425, 427, 776 P2d 46 (1989). Wife has the family home, which she intends to sell. She earns about $2,000 per month, and receives several thousand dollars each month from investments. She owes no child support. Husband will have to use a great percentage of his income to meet the equalizing judgment. Wife estimated her monthly expenses at $8,000, but the court rejected that figure and found that $4,000 would be sufficient to maintain her customary lifestyle. She has sufficient income. The court correctly declined to award support.

■ Finally, wife assigns error to the court's failure to award her attorney fees and costs. We review for abuse of discretion. *Richardson and Richardson*, 307 Or 370, 385, 769 P2d 179 (1989). Wife has sufficient funds to satisfy her legal expenses. The court did not abuse its discretion in requiring the parties to bear their own attorney fees and costs.

Affirmed on appeal and on cross-appeal. No costs to either party.