Argued and submitted October 11, affirmed December 11, 2002

In the Matter of the Marriage of

Jack Gus TRIPERINAS, Jr.,
*Appellant,*
*and*

Kathleen Jo TRIPERINAS,
*Respondent.*

99-00120D; A112562

59 P3d 586

George W. Kelly argued the cause and filed the briefs for appellant.

Jacqueline L. Koch argued the cause for respondent.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Husband appeals from a judgment of dissolution of a 20-year marriage. He challenges the trial court's award of spousal support and further argues that the court erred in awarding wife the long half of the marital estate. On *de novo* review, we affirm.

The parties were married in 1980. At the time of trial, wife was 40 years old and husband was 42 years old. The parties have three children: Mitchell, born in 1983, Mindy, born in 1986, and Morgan, born in 1996. Wife is the custodial parent of all three children. Mitchell was born with spina bifida. As a result, he is profoundly disabled and requires full-time care. He weighs over 200 pounds and requires someone to help him to bathe, to eat, and to change his diapers, among other things. He is also subject to seizures. Mitchell attends high school with the help of a full-time aide. The parties intend to keep him in school until he reaches the age of 21.

Both parties are high school graduates, and husband also completed two terms of college. During the marriage, husband worked in the grocery business as a clerk and later as an assistant manager and manager of stores owned by third parties. He also worked for approximately ten years as the owner-manager of a grocery store that he owned jointly with wife. In 1993, after the parties sold their grocery store, husband began to work at a car dealership owned by wife's family. At the car dealership, he earned more than twice as much as he had earned in the grocery business. However, as the marriage deteriorated, and in light of its impending dissolution, husband left that job and took a job at a local grocery store. His income is $2,439 per month.

In the past, wife has worked as a bank teller. While the parties owned their grocery store, she worked there part time. For a period of time during the marriage, pursuant to her agreement with husband, wife stopped working to care for the children. She currently works an average of 25 to 30 hours per week as an office helper at the car dealership owned by her family. She earns a monthly salary of $1,000.

Because of Mitchell's care needs, wife is required to be available at all times. Her work schedule is set around his school hours, and she leaves at times during the work day to attend to his needs and also to transport Morgan from preschool to day care. According to the testimony at trial, the constraints of Mitchell's need for care limit wife's employment opportunities.

Wife owns 70 shares, or 10.5 percent, of the car dealership owned by her family. She received the shares as a gift from her father. She also has a share in a capital account held by the car dealership. The capital account contains corporate earnings that are distributed to wife and then loaned back to the corporation. Wife's share of the capital account is about $37,400. The capital account is used by the dealership to operate its business, and the money cannot be used by individual shareholders without the consent of a majority of the dealership's shareholders. Consequently, the account is not available to wife for her personal expenses.

The parties own a house that is encumbered by two mortgages. The monthly payment on the mortgages is $1,356. Husband has two retirement accounts and life insurance with cash surrender value. He also has an interest in a limited liability company (MJT) that is connected to the car dealership owned by wife's family. The parties own two vehicles, a Dodge minivan encumbered by significant debt that is primarily used by wife and a Dodge truck that is used primarily by husband. The monthly payment on the minivan is $350. Apart from the debts owed on the house and van, the parties also have significant credit card debt. In addition, they owe money to wife's father and taxes to the state and federal governments.

The valuation of the marital estate was a significant issue at trial, and the expert testimony as to the value of certain assets is in conflict. The parties do not dispute the court's valuation of the tangible assets of the car dealership of $924,816. However, the court also found that the value of the dealership included goodwill, but it declined to assign a value

to any intangible asset, in effect giving no value to the goodwill. Olds, wife's appraiser, submitted an initial report valuing the dealership. Husband's appraiser, Arnold, reviewed Olds's report and then submitted his own valuations. Their valuations of the intangible assets of the dealership ranged from $106,718 to $690,334. Also, to determine the value of wife's shares in the dealership, the appraisers applied minority discounts. Arnold applied a 25 percent discount, and Olds discounted wife's shares by 48 percent.

The trial court valued and divided the marital assets and liabilities as follows:

| Assets | Wife | Husband |
|---|---|---|
| House | $158,000 | |
| Corporate Stock | 73,000 | |
| MJT | 5,000 | |
| Life Insurance | | $3,600 |
| Fidelity IRA | | 6,700 |
| SEP IRA | | 41,000 |
| 1985 Dodge Pick-up | | 2,400 |
| 1999 Dodge Caravan | 18,500 | |
| Gross Assets | $254,500 | $53,700 |

| Liabilities | | |
|---|---|---|
| Mortgage | $120,600 | |
| Second Mortgage | 20,300 | |
| Edvance Credit Card | 7,700 | |
| U.S. Bank Credit Card | 5,200 | |
| Federal Tax | | $4,200 |
| State Tax | | 3,000 |
| Debt for Dodge Caravan | 15,600 | |
| Debt to Wife's Father | 20,000 | |
| Total Liabilities | ($189,400) | ($7,200) |
| NET AWARD | $65,100 | $46,500 |

The court awarded the parties the personal property that they had in their possession at the time of trial, but it did not place values on that property. The court also specifically held that wife's share of the dealership's capital account was

included in the value of wife's stock and thus, did not assign a separate value to it. No equalizing judgment was awarded to husband, thereby resulting in wife receiving the long half of the marital estate. In addition, the trial court awarded indefinite spousal support to wife of $150 per month and required husband to pay child support.

■    Husband first argues that the trial court erred in awarding spousal support to wife. He asserts two grounds in support of his assignment of error. First, he argues that, because wife did not request spousal support in her pleadings and raised the issue for the first time in her trial memorandum, it was procedurally improper for the trial court to award spousal support. Second, he argues that the support award constitutes an improper "token award," made not because wife needs spousal support, but rather in order to preserve her right to later seek still more support.

In its discussion of the award of spousal support, ORS 107.105(1)(d) (1997)[1] outlines several factors that are to be considered in determining whether support should be awarded. The trial court reasoned:

"[T]he following [factors] are the most important in this case: the length of the marriage; the relative earning capacities of the parties; and, Wife's custodial responsibilities. As explained below, the last factor also plays a role in the catchall category of what is 'just and equitable.'

"Under [the statute], the Court is to consider '[a] party's custodial and child support responsibilities.' In this case, Wife's custodial responsibility of providing substantial care for Mitchell, coupled with the cost of hiring someone to provide that care, significantly impacts her ability to work outside the family home. His need for constant attention keeps her close to home. Her earning capacity is not sufficient to justify hiring another to provide the care to allow her to engage in full-time employment.

---

[1] ORS 107.105(1) was amended in 1999. Those amendments apply only to petitions filed on or after October 23, 1999. The statute was also amended in 2001. Or Laws 2001, ch 873, § 5. However, those amendments do not affect the issues presented in this case. Thus, because the petition to dissolve the parties' marriage in this case was filed on October 20, 1999, we apply ORS 107.105(1)(d) (1997).

"While the impact of Mitchell's needs on Wife's earning capacity are considered in large part by the child support guidelines, the impact is not fully considered for two reasons. First, his need for assistance will outlive Husband's obligation to pay for Mitchell's support. Second, the longer she is out of the job market as a result of her son's needs, the more limited her employment prospects become.

"Husband contends that Wife's request for spousal support comes too late. No such request was make in her petition and, apparently, the notion first formerly [*sic*] appeared in her trial memorandum. Generally, such an objection would be summarily sustained. This, however, is not the general case. Primarily due to the issues involving Mitchell and the impact on Wife's financial matters, and because the financial impact on Husband is negligible, in order to allow for judicial review if called for in the future, spousal support is set at the sum of $150 per month for an indefinite period."

(Footnote omitted.)

We turn to the procedural aspect of husband's first assignment of error. The trial court awarded wife spousal support even though she raised the issue for the first time in her trial memorandum and did not request support in her pleadings. We begin our analysis by observing that a court exercising jurisdiction over the dissolution of a marriage has full equitable powers. ORS 107.405. For instance, in *Jones and Jones*, 31 Or App 1171, 1174, 572 P2d 347 (1977), we held that the trial court's authority "to fashion an equitable decree which is responsive to the circumstances apparent from the record is not strictly confined to the relief sought in the parties' pleadings." Rather, the court may exercise its discretion to award any relief authorized by statute. Consequently, we held in *Jones* that the trial court did not err in suspending child visitation, even though the mother had not asked for that relief. Our holding in *Jones* followed the Oregon Supreme Court's decision in *Grove and Grove*, 280 Or 341, 571 P2d 477, *modified on den of reh'g*, 280 Or 769, 572 P2d 1320 (1977), where the court increased spousal support and eliminated a provision for the termination of spousal support, even though the wife did not appeal or ask for that relief. As the court in *Grove* observed, "although the issue which we are here concerned is spousal support, that issue

cannot adequately be considered, except in light of the provision in the dissolution decree for division of property and child support. * * * In practice, the financial portions of a dissolution decree are worked out together, and none can be considered in isolation." 280 Or at 344. ORS 107.105 provides that, when a court grants a judgment of dissolution of marriage, it may include provisions for spousal support and the division of the parties' property. As the Supreme Court said in *Haguewood and Haguewood*, 292 Or 197, 206, 638 P2d 1135 (1981), "a marital dissolution often requires the achievement of certain social as well as financial objectives which may be unique to the parties." Our review of the above case law and of the authority granted to courts under ORS 107.405 and ORS 107.105(1) (1997) leads to the following conclusion: whether or not a specific kind of relief is pleaded, a court exercising jurisdiction over the dissolution of a marriage has the authority to grant the relief authorized by statute in order "to do equity," so long as the parties have a fair opportunity to be heard.

■      Having concluded that the trial court had the authority to consider awarding spousal support although it was not requested in the pleadings, we turn to the procedural issue of whether the trial court abused its discretion in considering the issue of spousal support over husband's objection that he had been unable to conduct discovery as aresult of wife's belated claim. Wife's trial memorandum urged that wife "will need substantial support for an indefinite period," relying, in part, on her employment history and her need to care for Mitchell together with the attendant costs of care for Mitchell. The trial court could have reasonably determined that none of those issues came as a surprise to husband. Moreover, husband's attorney questioned witnesses at trial about wife's future employment possibilities, and the trial court heard evidence relating to the factors listed in ORS 107.105(1)(d) (1997). Under the circumstances, we hold that the court did not abuse its discretion in considering the issue of spousal support, nor did it erroneously exercise its statutory authority to award spousal support when the issue had not been pleaded in wife's pleading.

■      Husband further argues that the trial court's spousal support award was a "token" award and, thus, even if the

issue were properly before the court, the award was impermissible under the law. This court has held that "awards of token spousal support for the purpose of preserving a basis for future increases are speculative and not based on need." *Ash and Ash,* 61 Or App 595, 598, 658 P2d 540 (1983). Husband focuses on the words used by the trial court in its opinion that "in order to allow for judicial review in the future, spousal support is set at the sum of $150 per month for an indefinite period." Husband argues that the court's statement indicates that it awarded spousal support only to preserve a basis for wife to seek a future increase in support rather than to provide for her present needs.

We reject husband's argument for at least two reasons. First, in a footnote to the above sentence, the trial court stated:

> "For the purpose of assisting any judge who may hear this matter in the future, this Court is of the opinion that the following would constitute a substantial change in circumstances justifying a review of the propriety of continuing the spousal support order: (i) both parents' incomes and expenses remaining relatively stable, and (ii) Mitchell receiving SSI and relative foster care benefits in a sum approximating the amount estimated by [wife's witness]."

That statement makes clear to us that the intent of the trial court's statement, "in order to allow for judicial review in the future," was to explain its reasoning so that, in the event of a subsequent modification proceeding, the court conducting that proceeding would be aware of what the trial court contemplated in making its spousal support award.

Second, on *de novo* review, there is no question that wife has a significant need for spousal support. She has custody of the children, including the parties' disabled son. She makes only $1,000 per month, and Mitchell's care requirements significantly limit her earning ability. Her mortgage and car payments alone total $1,706 per month. The trial court also gave wife the responsibility of paying a significant amount of the marital debt. The circumstances of this case simply do not support husband's assertion that the award of spousal support to wife was erroneous. We conclude that the

amount of support awarded by the trial court is commensurate with her needs and husband's ability to pay.

■ ■ We turn now to the property division. Husband argues that the trial court erred in its property award because wife received significantly more of the marital assets than did husband. Husband says that the trial court incorrectly "undervalu[ed] the family corporation, [applied] a discount to wife's shares, [ignored] wife's capital account, and [gave] no value to the minor personal property." In determining what division of the marital estate is just and proper under all the circumstances in accordance with the statutory mandate, "courts may consider any special circumstances that might dictate unequal division of the parties' property." *Stice and Stice*, 308 Or 316, 328, 779 P2d 1020 (1989). Although the trial court acknowledged that it awarded wife a majority of the marital assets, it refused to award husband an equalizing judgment, stating that,

> "There is no equalization judgment. To balance the net distributions, an equalization judgment in the amount of $11,900 could be entered in Husband's favor. Under the circumstances of this case, it would not be equitable to do so. While Wife has been granted a majority of the assets, she also has assumed almost all of the debt. From a cash flow perspective, she will be hard pressed to get by on a month-to-month basis, let alone satisfy an equalization judgment. Husband, on the other hand, though left with minimal assets, is in a better position to tend to his monthly needs."

(Footnote omitted.)

First, husband argues that the trial court failed to include the value of wife's capital account in the assets awarded to her. The court determined that the account consisted of retained earnings. Thus, according to the trial court, the value of the account was "a portion of [wife's] stock ownership" and was included in the value of that asset. For that reason, it did not assign value to the account as a separate asset. Husband argues that the trial court misunderstood the testimony. According to husband, testimony at trial indicated that the capital account was listed in the corporate books as a debt owed by the company. Thus, the value of the account was not included in the value of wife's stock, and the asset

should have been valued separately. For purposes of our discussion, we give husband the benefit of his argument. We assume without deciding that husband's analysis is correct and that the capital account was not included in the value of wife's stock. Under that assumption, we would add $37,400, the value of wife's account, to the total value of the assets awarded to wife.

■ Next, husband argues that the trial court should have assigned value to the goodwill of the car dealership. Ordinarily, operating businesses such as car dealerships have goodwill value unless the success or failure of the business depends on the services of one individual. *Adams and Adams,* 121 Or App 187, 190, 854 P2d 501 (1993). Although the trial court specifically held that the car dealership had goodwill, it failed to assign any value to the goodwill, stating that:

> "good will [*sic*] is generally considered to be the incalculable customer favor a business earns which is above and beyond the value of the product it sells. * * * [T]he attempt to objective[ly] calculate good will [*sic*] falls short because many of the factors are subject to manipulation."

We do not agree with the trial court that a proper reason for not valuing the goodwill in this case is that goodwill is subject to accounting manipulation. Although the evidence of the value of goodwill may be so speculative in a particular case that no evaluation can be made, *see, e.g., Reiling and Reiling,* 66 Or App 284, 288, 673 P2d 1360 (1983), *rev den,* 296 Or 536 (1984), that is not the case here. The trial court had before it substantial evidence of goodwill and, in fact, found that the business had a goodwill value. Consequently, it should have assigned value to the goodwill asset that it found to exist. As noted above, the experts valuations of the company's intangible assets ranged from $106,718 to $690,334. Husband suggests that the different values for goodwill arrived at by the appraisers be averaged and the goodwill be assigned a value of $348,607. For purposes of our later discussion, we accept husband's suggestion. The goodwill, as valued above, when added to the tangible assets, would give the dealership a net value of $1,273,423. Thus, before the application of any discount to wife's shareholder

interest, her 10.5 percent interest in the dealership is worth $133,709.

Husband further argues that the trial court erred when it applied a 25 percent minority discount to the value of wife's stock. In applying the discount, the trial court stated:

"In a case like this, involving a family company, where there is a minority interest at issue, there are substantial restrictions on the sale of that interest, the interest constitutes one of the largest assets in the marital estate, to not discount the value of the interest is to ignore economic reality and to apply too large of a discount is to grant a financial windfall to the recipient spouse."

Husband, however, argues that, in light of the facts that wife cannot sell her interest independently of the other shareholders and that wife does not contemplate selling her interest, "the notion that she will even have to sell at a discount is entirely speculative." He concludes that no discount should be made in the calculation of the value of her shareholder's interest.

We are not persuaded by husband's argument. In support of his argument that there must be a sale contemplated or possible in order to justify the application of a discount, husband cites several cases in which we held that a marketability discount was inappropriate.[2] However, we have emphasized that " 'valuation is a fact-based analysis necessarily taken on a case-by-case basis.' " *Batt and Batt*, 149 Or App 517, 524, 945 P2d 517, *rev den*, 326 Or 233 (1997) (quoting *Tofte and Tofte*, 134 Or App 449, 457 n 5, 895 P2d 1387 (1995)). For example, in *Reiling*, the court applied a 25 percent discount to a minority interest in a closely held corporation because expert testimony in the case established that the "minority interests in closely held corporations are generally at the so-to-speak mercy of the other stockholders." 66 Or App at 291. Further, in *Belt and Belt*, 65 Or App 606, 610-11, 672 P2d 1205 (1983), *clarified*, 68 Or App 42, 68 Or App 42, 680 P2d 390 (1984), we applied a 50 percent minority discount where expert testimony established that the fact

---

[2] We note that the trial court in this case applied a minority discount rather than a marketability discount.

that the stock interest was a minority interest in a closely held family corporation had a substantial impact on what a willing buyer would pay on the open market, even though there was no evidence of a contemplated purchase. Consequently, we reject husband's apparent assertion that a contemplated sale is a predicate before a minority shareholder discount can be utilized for purposes of stock valuation, and we turn to the particular facts of this case.

Both expert witnesses in this case applied a discount to the stock in the family car dealership. Husband's expert applied a 25 percent discount, while wife's appraiser used a 48 percent discount. The trial court adopted the discount used by husband's expert. No expert witness testified that a discount should not be used in valuing wife's stock. Given the fact that both experts found a discount to be appropriate in valuing wife's stock and the other circumstances in this case, we agree that the trial court did not err in accepting husband's own evidence. As noted above, if we accept husband's theory, wife's interest in the company, before the application of a discount, would have a value of $133,709. Once the 25 percent discount is applied, the value of the stock would be $100,282.

We will also assume for purposes of discussion that the court should have included the value of the personal property that it awarded in the valuation of the assets distributed to each party. The personal property in wife's possession was appraised at $4,313. The property in husband's possession was appraised at $500. If we were to make all of the above adjustments, the result would be that wife would have been awarded $134,095 in net assets, and husband would have been awarded $47,000 in net assets. According to husband, that disparity is unjust and should be remedied by an award of either an equalizing judgment or an interest in the stock or in MJT.

Under ORS 107.105(1)(f) (1997),[3] the trial court's distribution of the marital estate is to be "just and proper in all

---

[3] The relevant text was unaffected by the 1999 and 2001 amendments to the statute.

the circumstances." In carrying out that objective, the parties' finances should be disentangled as much as possible. *Haguewood*, 292 Or at 207. Finally, this court will not modify a property division unless it is convinced that it can make a disposition significantly preferable to that which was made by the trial court. *Leslie and Leslie*, 130 Or App 327, 331, 881 P2d 159 (1994). In its discussion about the division of property, the trial court specifically expressed its intent to "disentangle the parties financially to the extent possible." To that end, it awarded wife the stock in the dealership and the interest in MJT, businesses that are owned and operated by her family. We agree with the court that to award husband an interest in wife's family owned corporation would significantly entangle the parties. Further, there are special circumstances present in this case that justify an unequal property division. Wife is responsible for the care of Mitchell and also has custody of the parties' other two children. She needs a residence for the children and a vehicle in which to transport them. Her earning capacity is significantly limited by Mitchell's care requirements. Additionally, although wife received a majority of the marital estate, she also is responsible for significant debts under the trial court's distribution. Also, the assets she received are not liquid and thus will not assist her in covering the expenses incurred by the family on a monthly basis. As the trial court said, wife will "be hard pressed to get by on a month-to-month basis, let alone satisfy an equalization judgment" as requested by husband. Further, although husband received significantly fewer assets, he is in a superior position to support himself and pay his personal expenses. Under the circumstances, we find that the trial court correctly concluded that the parties' finances should be disentangled and that an equalizing judgment would be inequitable. Because we are not convinced that we can make a distribution of property that is substantially preferable to that made by the trial court, we will not disturb its distribution on appeal.

In sum, although wife did not request spousal support in the pleadings, the trial court had the authority to consider the issue and, on the record before us, did not abuse its discretion in considering the issue over husband's objection.

We also conclude that an award of spousal support is warranted on the facts of this case. Further, although we disagree with the trial court's valuation in some respects, we hold that the court made an equitable distribution of the parties' property under all the circumstances. Thus, the trial court did not err on either of the grounds asserted by husband.

Affirmed.