Argued and submitted October 3, 2011, affirmed December 12, 2012

In the Matter of the Marriage of

Kelly Eugene STEELE,
*Petitioner-Appellant,*
*and*

Kelly Anne STEELE,
*Respondent-Respondent.*

Multnomah County Circuit Court
080868370; A143696

293 P3d 1077

John M. Petshow argued the cause and filed the briefs for appellant.

Steven R. Scharfstein argued the cause for respondent. With him on the brief was Moore Law Group, P.C.

Before Ortega, Presiding Judge, and Brewer, Judge, and Hadlock, Judge.

ORTEGA, P. J.

**ORTEGA, P. J.**

Husband appeals a general judgment of dissolution, challenging an award of indefinite spousal support to wife and three supplemental judgments awarding wife attorney fees. We conclude that the trial court's award of indefinite unallocated compensatory and maintenance spousal support of $4,200 per month is within the range of legally correct outcomes and reject husband's attorney fee challenge without further discussion.

Husband seeks *de novo* review, requesting that we make one or more factual findings anew on the record and identifying those facts that he contends "do not comport with the evidence in the record." We exercise our discretion to review *de novo* only in "exceptional cases," ORAP 5.40(8)(c), and we are not persuaded that this is such a case. ORS 19.415(3)(b). Accordingly, because we decline to review the facts *de novo*, we are bound by the trial court's findings of historical fact if there is any evidence in the record to support them. *Berg and Berg*, 250 Or App 1, 2, 279 P3d 286 (2012). "[T]he trial court's award will be upheld if, given the findings of the trial court that are supported by the record, the court's determination that an award of support is 'just and equitable' represents a choice among legally correct alternatives." *Id.*

We state the facts as the trial court found them and as supplemented by our review of the record. The parties were married for 24 years and, at the time of the trial, both were in their mid-forties. Wife had completed two-and-one-half years of college at the time they married, and she completed her degree during the early years of the marriage. Initially, she worked in a college admissions office, but she quit her job in 1992 when the parties' first child was born. The parties had agreed that, once they had a child, wife would stay home while husband provided the family's sole source of income. The parties had a second child in 1998. At the time of trial, husband had custody of the older child and mother had custody of the younger child.

Husband has been a BIOS software engineer since 2000. He lacks a college degree (unusual for his field), but has an innate ability for the work; he showed an aptitude

for software programming while working for the Gresham Police Department in the 1990s as a technician, and he rose quickly in the field. He has received specialized training and has held a series of jobs as a software engineer. The trial court found that, at the time of trial, husband's gross monthly income was $11,560. Wife, although unemployed, was taking online classes toward a master's degree in accounting, which she expected to complete in two years. She had not worked since quitting her job in college admissions in 1992. The trial court imputed the minimum wage of $1,455 as wife's gross monthly income.

During the marriage, the family's finances were "sometimes good and sometimes bad." However, the record reflects a series of financial difficulties. The parties lost their 2,500 square foot, four-bedroom, two-and-one-half bathroom Gresham house through foreclosure. The parties also had a vehicle repossessed and filed a joint bankruptcy at some point during the marriage. Wife also filed an individual bankruptcy during the marriage, and she testified at trial that she planned to file another bankruptcy following the dissolution. Husband had liquidated the majority of his retirement account during the marriage to pay off debt. The marital estate at the time of the trial was practically nonexistent.

Wife testified that her employment prospects were minimal, particularly in light of her physical ailments and the parties' poor financial history. She explained that she suffers from various health problems, including permanent disabilities related to two auto accidents and complications from diabetes, which have affected her ability to work. In addition, wife testified that, even if she finished her master's degree, her chosen field of accounting likely would be foreclosed to her as result of the parties' financial history— that is, a person with her credit history would be undesirable to employers in the financial services field.

After the trial, the court awarded wife "indefinite unallocated compensatory and maintenance spousal support" of $4,200 per month based on the duration of the marriage, wife's contribution to husband's advancement in his career and earning capacity, wife's custody of the younger child, the disparity in earning capacity between the parties,

wife's unemployability, the tax consequences of the award to the parties, and the limited marital estate.

We begin with a brief overview of the types of spousal support that the court awarded here, keeping in mind that "[t]he lodestar of a court's charge is to make a spousal support award that is 'just and equitable.'" *Bailey and Bailey*, 248 Or App 271, 276, 273 P3d 263 (2012); *see* ORS 107.105(1)(d). Compensatory spousal support is authorized

> "when there has been a significant financial or other contribution by one party to the education, training, vocational skills, career or earning capacity of the other party and when an order for compensatory spousal support is otherwise just and equitable in all of the circumstances."

ORS 107.105(1)(d)(B). In determining the amount and duration of such an award, the court considers the amount, duration, and nature of the contribution by the spouse, the duration of the marriage, the relative earning capacity of the parties, the extent to which the marital estate has already benefited from the contribution, the tax consequences to each party, and any other factors the court deems just and equitable. *Id.*

Maintenance support generally "allows one financially able spouse to contribute to the support of the other, depending on the financial needs and resources of each party." *Abrams and Abrams*, 243 Or App 203, 207, 259 P3d 92, *rev den*, 350 Or 716 (2011). Although it is true, as husband points out, that, in determining the amount and duration of spousal support, the goal of self-sufficiency is an important consideration, in long-term marriages "the parties should be separated on as equal a footing as possible," and the primary goal of spousal support is to provide a standard of living to both spouses that is roughly comparable to the one enjoyed during the marriage. *Id.* at 211-12. In determining the proper amount and duration of a maintenance spousal support award, the court considers the duration of the marriage; the age of the parties; their health, including their physical, mental, and emotional condition; the standard of living established during the marriage; the relative income and earning capacity of the parties; a party's training and employment skills and work

experience; the financial needs and resources of each party; the tax consequences to each party; and a party's custodial and child support responsibilities. ORS 107.105(1)(d)(C).

In a letter opinion to the parties, the court ruled that

"[w]ife is awarded indefinite unallocated compensatory and maintenance spousal support * * * for all the reasons stated in [wife's] trial memorandum and the court's prior findings, in the amount of $4,200 per month. The Court considered that [wife] was a homemaker and stayed home to raise the parties' two children and to enable husband to pursue his career. Husband has custody of the oldest daughter who has two years of high school remaining, while [wife] has custody of the 10 year-old daughter with eight years of school remaining. [Wife] is working on a Master's degree but is unemployable, due in large part to the parties' poor financial history. Husband's spousal support is deductible for him but taxable to Wife."

Consistently with the letter opinion, the court's judgment of dissolution explained that, "in addition to the findings noted in its opinion letter,"

"[h]usband is highly qualified and very intelligent, as reflected in his job career and qualifications; this is a 24 year marriage; there are two joint children; Wife has historically been a homemaker, and has health issues which affect her employment options; Wife is in graduate school; Wife has lesser employment prospects in her lifetime; Husband's financial misconduct has impacted Wife's job prospects; Husband's mismanagement has caused home and vehicle foreclosures, and two bankruptcies[.]"

On appeal, husband contends that the amount and duration of spousal support is "outside the range of reasonableness by a significant enough margin so as not to be just and equitable in the totality of the pertinent circumstances." In particular, he contends that the award exceeds wife's monthly needs by $500, while it leaves him with insufficient funds to meet his own needs. Further, although husband recognizes that the marriage was of long duration, he asserts that wife will have an advanced college degree that would allow her to surpass husband's earning capacity. Alternatively, he claims that, even if wife is only

able to make a modest living, she will eventually be able to meet her expenses without the level of support ordered by the court.

As noted, the goal of spousal support in a long-term marriage such as this is to leave the parties on as equal footing as possible. However, other than the bare assertion that the award will leave him with insufficient funds to meet his own expenses, husband fails to explain that statement or point to evidence in the record that supports it. Accordingly, we reject it. As to husband's argument that wife's earning capacity was underestimated by the court when making the award, we are bound by the trial court's determination of wife's limited earning capacity because evidence supports its finding that wife was essentially "unemployable," given her physical infirmities, her limited training and employment skills, and the parties' history of bankruptcy and foreclosure. Accordingly, given the duration of the marriage, wife's poor health, the clearly disparate earning capacities of the parties, and the other factors considered by the court, the spousal support award was within the range of legally correct alternatives.

Finally, we address husband's argument that the trial court impermissibly used husband's "financial misconduct" and "mismanagement" of the marital estate as a basis for awarding compensatory spousal support. He declares, relying on *Garza and Garza*, 201 Or App 318, 118 P3d 824 (2005), that an award of compensatory spousal support cannot be a punitive measure for "mistreatment" of the spouse. In particular, husband asserts that attributing the foreclosures and other financial problems of the family to husband "just because he was the breadwinner" was punitive.

We reject husband's assertion that the court impermissibly granted compensatory spousal support on the basis of its finding that husband mismanaged the parties' finances. The court's findings related to husband's "financial misconduct" and "mismanagement," when read in context, refer to the effect of those actions on the marital estate, as well as on wife's employment prospects. Accordingly, there is no indication that the court awarded compensatory spousal

support as a punitive measure for husband's financial "mismanagement."

Affirmed.