Argued and submitted October 24, 2012, affirmed April 24, 2013

In the Matter of the Marriage of

Mary Alexis DOW,
*Petitioner-Appellant,*
*and*

Russell Alfred DOW,
*Respondent-Respondent.*

Multnomah County Circuit Court
031172540; A148380

302 P3d 1188

Eli D. Stutsman argued the cause for appellant. With him on the briefs was Eli D. Stutsman, A Professional Corporation.

Margaret H. Leek Leiberan argued the cause for respondent. With her on the brief was Jensen & Leiberan.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

## HADLOCK, J.

Wife appeals a supplemental judgment that modified the terms of a 2004 stipulated judgment that dissolved her marriage to husband. Wife challenges both the trial court's modification of husband's spousal support obligation and the court's decision to award husband a share of wife's Oregon Savings Growth Plan (OSGP) account, the existence of which she had not disclosed at the time of the parties' divorce. Without further discussion, we reject wife's argument that the trial court erred in awarding husband a share of her OSGP account. For the reasons set forth below, we also reject wife's contention that the trial court erred when it modified the terms of husband's spousal support obligation. Accordingly, we affirm.

The supplemental judgment includes extensive factual findings that wife does not challenge on appeal. We discuss the facts in accordance with those unchallenged findings, the parties' stipulations, and other uncontested information in the record. Because an extended discussion of the underlying facts would not benefit bench or bar, we quote only those findings that relate to the arguments that wife raises on appeal, which are mostly procedural.

The parties were married in 1971 and had two children in the 1980s. Husband is a physician and wife is a certified public accountant. The parties agreed to a stipulated general judgment of dissolution in 2004. At that time, husband's monthly income was $12,074 and wife's was $6,868. The stipulated dissolution judgment included the following terms related to spousal support:

> "[Wife] shall receive spousal maintenance pursuant to ORS 107.105. The spousal support award herein is based upon the factors set forth below, including, but not limited to the following:

> "[Listing factors.]

> "[Wife] is awarded compensatory support for [wife's] significant financial or other contribution to education, training, vocational skills, career, or earning capacity of the other party and when such an award is otherwise just and equitable pursuant to ORS 107.105. The spousal support

award herein is based upon the factors set forth below, including, but not limited to the following:

"[Listing factors.]

"* * * * *

"A.   As compensatory support and spousal maintenance, [wife] is awarded support in the sum of $1,000 per month commencing on the first day of October 2004 and continuing * * * until [wife] reaches the age of 67 * * *. In the event that [husband's] annual income * * * exceeds $160,000, spousal support shall be increased in the following year by 50% of the amount earned in excess of $160,000 by [husband]. * * * In the event that [wife's] annual income * * * exceeds $120,000, [wife] shall pay in the following year 50% of the net amount earned in excess of $120,000 by [wife] * * *."

The parties have referred to the contingent support requirements in the last-quoted paragraph as the "overage provision" of the stipulated judgment, and we do likewise.

The 2004 stipulated judgment also included child support provisions and a division of the parties' real and personal property. The judgment provided that the parties' marital home would be listed for sale in the fall of 2007, or another date agreed to by the parties, with sale proceeds to be divided between the parties. The judgment also allowed wife to retain possession of the home until it sold. The trial court later found that wife "did not cooperate in good faith to cause the sale of the house" in 2007, but instead continued to live there "rent and mortgage free."

In 2009, wife moved to modify husband's obligation to pay wife spousal support "to such terms as are just and equitable under all of the relevant circumstances," claiming that she had suffered a significant reduction in income because she had lost her job and a position as a corporate director. Husband filed a response in September 2009 in which he argued that the trial court should deny wife's motion because there had not been "a change in circumstances sufficient to warrant a spousal support modification." He also pleaded, as a counterclaim, that he should be awarded a money judgment of $450,000 for wife's failure to put the marital home on the market in the fall of 2007 when, he argued, it could have sold for a higher price than it was likely to command in 2009.

The hearing on wife's motion was postponed repeatedly. In early 2010, wife amended her motion to modify the stipulated judgment, asking the trial court for an order quantifying the amount of spousal support that husband owed her for 2008 and 2009 by operation of the overage provision.[1] Wife later asked the trial court to issue an order requiring husband to show cause why an order should not be entered against him "[m]odifying the current spousal support awarded to [wife] pursuant to the Stipulated General Judgment for Dissolution of Marriage." Wife had obtained new employment since she lost the position she had held at the time of the parties' divorce, but she asserted in an affidavit that she recently had received a termination notice from her new employer, was trying to find other work, and had applied for unemployment benefits. Accordingly, wife claimed, "there [had] been a substantial and unanticipated change in [her] financial circumstances * * * warranting a review and increase in [her] spousal support award."

Wife also filed a new hearing memorandum in which she asserted that the issues before the court were her amended motion to modify the stipulated judgment and husband's response and counterclaim from September 2009. Wife asked the court to order husband to pay her additional spousal support for 2008 and 2009 and to implement reasonable terms for sale of the marital residence.

In his response to the motion for order to show cause, husband denied wife's assertion that spousal support should be modified; according to him, "there [had] been no substantial change in circumstances sufficient to warrant a spousal support modification." If the court found that a substantial change in circumstances had occurred, however, husband requested "that the 'overage' provision of the spousal support in * * * the Judgment of Dissolution be eliminated in its entirety." Husband acknowledged that he owed wife spousal support for 2009 based on the overage provision, although he disagreed with wife about the amount. Husband also asked the court to order that the

---

[1] At one point, wife withdrew "her motion to modify the maintenance and compensatory spousal support award," but she later renewed her request for modification of husband's support obligation.

marital residence be listed for sale at a specific price, with periodic price drops.

At an April 2010 hearing, the trial court resolved the dispute regarding spousal support for 2008 and 2009. The court also ordered the parties to sign a new listing agreement for the family residence, putting it up for sale on specific terms. Wife's motion to modify the terms of husband's spousal support obligation remained pending.

In September 2010, husband filed what he characterized as an amended response to wife's motion for an order to show cause regarding modification of spousal support, along with a counterclaim. Husband denied wife's assertion that his spousal support obligation should be increased. Instead, he asserted, "spousal support should be terminated based on [wife] providing misleading information following the parties' dissolution of marriage on November 4, 2004." As a counterclaim, husband asked that he be awarded spousal support for 2005 and 2006 based on wife's failure to disclose income she had earned in those years—income that would have triggered payments by wife to husband under the overage provision in the stipulated judgment. Husband also asked that he be awarded a share of wife's OSGP account, which he claimed she intentionally had failed to disclose at the time of the dissolution.

In his hearing memorandum, husband asserted that wife's financial circumstances were not as bleak as she had depicted; consequently, he argued, she had not demonstrated an increased need for income sufficient to justify an upward modification of the support award. Husband emphasized that wife had over $1.2 million in retirement assets, excluding her PERS and OSGP accounts. Husband suggested that wife's retirement assets alone gave her sufficient income on which to live, as she was 61 years old and could withdraw from those accounts without penalty. Husband noted that he had approximately $500,000 less in retirement assets than wife did, and no PERS account or other pension beyond Social Security.

Husband also argued in favor of his counterclaim, contending that wife had fraudulently concealed income

from 2005 and 2006 that would have triggered an obligation for her to pay him spousal support under the overage provision. In addition, husband claimed that wife had hidden her OSGP account from him at the time they divorced, and he asked for one-half of the current value of that asset. Husband also stated that "his ultimate preference would be a termination of the spousal support obligation." In the end, husband asserted that, as a result of hiding income in 2005 and 2006, and because she had been able to live rent and mortgage free in the family home for years after the home should have been sold, wife had been able to contribute significant sums to her retirement accounts, giving her a source of income that would allow her "to retire and live comfortably for the rest of her life." Husband concluded by arguing that the trial court should deny wife's motion to increase her spousal support and should either eliminate the spousal support obligation or eliminate just the overage clause.

In her own hearing memorandum, wife acknowledged that husband sought to terminate his spousal support obligation. On her own motion to modify spousal support, wife argued that husband's obligation should be increased to $3,000 per month, retroactive to April 1, 2010 (the date on which wife filed her latest modification motion), and should increase by another $1,000 per month when her unemployment benefits expired. Wife acknowledged that she previously had miscalculated her income for 2005 and 2006, omitting contributions she made to the OSGP, and she agreed to pay the amounts owing under the overage provision for those years.

A hearing took place over five days in October 2010 and January 2011. After receiving extensive evidence regarding the parties' finances, including expert testimony about wife's ability to live on the interest from her retirement accounts, the trial court entered a supplemental judgment that included the following findings:

"5.   [Husband] has new employment and is salaried with a current gross monthly income of $18,333 per month.

"6.   [Wife's] income is more difficult to determine since she is self employed now having lost her steady source of income

since the [stipulated] judgment was entered. The best evidence before the court is that in 2010 [wife] earned $2,330 gross monthly and $130 after business expenses.

"7.   The above level of business expense makes no sense to the court given the modest amount of gross earnings, and the court notes that a number of business expenses by which [wife] decreased the amount of income she has to support herself is duplicated in her uniform support affidavit by which she allegedly documents her financial needs. The court has backed those items out of the income needs professed by [wife] in reaching this decision.

"* * * * *

"10.   [Wife] did not cooperate in good faith to cause the sale of the house instead while living rent and mortgage free in the house and receiving support from [husband], including years in which she actually earned virtually the same as [husband], she was able to contribute substantial amounts into retirement accounts.

"11.   In contrast, [husband] has been forced to spend retirement accounts * * * to meet goals that the proceeds from the sale of the house otherwise would have met.

"12.   As a result, [wife] now has substantially greater retirement assets than does [husband].

"13.   In years 2005 and 2006 [wife's] personal gross annual income came close to [husband's] income and she still received the $12,000 in base spousal support from him. Her income was beyond her living expenses even without spousal support. During those years she was able to add substantial amounts to her retirement, much of which went into her [OSGP].[2]

"14.   The court finds unconvincing [wife's] testimony that her failure to include this asset in the list of assets that she assembled at the time of divorce was an innocent mistake * * *.

---

[2] Wife acknowledged at hearing that her OSGP account "was erroneously omitted from the schedule of assets that was provided to the mediator" at the time of the divorce; she also acknowledged that she had been contributing the maximum allowable amount to that account per pay period, for a total of $18,000 in 2004. Wife also admitted that she had significantly underreported her income to husband from 2004 through 2006. Moreover, she acknowledged that she had made significant contributions to her retirement accounts during those same years— amounts that ranged from about $36,000 to $52,000 annually.

"15.   Instead, [wife] engaged in a course of conduct designed to deceive [husband] concerning the extent of her annual income from 2005 - 2006 in part by using the [OSGP] as a device which would permit her to divert income from her reportable taxable income and delete this income from the income she was required to report to him for purposes of calculating the overage clause.

"*****

"21.   In addition to the money saved while living in the family home for an additional three years [wife] continued to receive spousal support during 2005 and 2006 when her income resultantly was substantially greater than [husband's]. [Husband] could well have moved to end spousal support as well as substantially reduce his child support obligation to what the relative incomes would have warranted.

"22.   [Husband] is awarded one-half of the current value of the [OSGP]. ***

"23.   As a penalty in this matter the court considered the forfeiture of the entire amount of the [OSGP] in its entirety and its complete award to [husband], but did not do so because of other decisions in this matter.

"*****

"26.   The court finds that it is appropriate to eliminate the overage provision in its entirety from the divorce judgment retroactive to April 1, 2010, in order to prevent [wife] from further manipulation of this provision to her benefit.

"27.   [Wife] has established that a substantial and unanticipated change in economic circumstances occurred since the time that support was awarded in the parties['] dissolution judgment. The current economic circumstances which have limited [wife's] ability to maintain her previous well paying level of employment could not have been anticipated at the time of the judgment.

"28.   [T]he court anticipates that [wife] will be able to find some source of additional income even given her age. [Wife] is highly experienced, well regarded, articulate, educated and skilled. ***

"29.   The court is also required by statute to consider retirement benefits available to both of the parties, presumably to determine whether the existence of retirement benefits can replace lost income and do not require further entanglement

of the parties. In this instance the court has found that [wife] has had the opportunity at the expense of [husband] to greatly supplement her retirement. * * *

"* * * * *

"33. As to the base support ordered in the [stipulated] judgment, the court does not intend to revisit the parties['] decision that such a support award was just and proper given the combined nature of compensatory and maintenance support.

"34. However, in addition to that support, [wife] can draw on investment income from her retirement accounts without invading the principal of those assets, based upon very modest growth projections for a minimum of $50,000 a year without considering the addition to those investment assets of proceeds from the sale of the house, which will exceed $200,000 to her. The court realizes that some of that money may be spent on the home which she is purchasing and therefore does not add that number into [its] calculations.

"35. At present [wife] is receiving $25,620 a year in unemployment income. * * * [It is] reasonable to assume that [wife] can replace that modest amount of income with modest employment earnings if she lowers her sights and applies for less highly compensated employment, should she choose to do that. With these sources of income and [husband's] support of $12,000 per year wife has income of $87,620 and her minimal needs are met.

"36. If [wife] wishes to live a more lavish life style * * *, she may decide, though the court is not ordering her to do so, to begin accessing social security or accessing her PERS which she can do in February, 2011, without any penalty or other financial consequence.

"37. Concerning [wife's] motion to modify and award additional amounts of spousal support, the court looked at the relative financial situations of the parties both of whom are currently 62. [Husband] is over $500,000 behind in retirement accounts * * *. [Husband] will need to set aside $50,000 per year prior to the age of 67 in order to enter retirement in a comparative financial situation with [wife]. It is not just and proper to expect that he will further compromise his ability to equalize that financial situation for his future retirement by ordering that he provide additional support for [wife].

"38. It is important to not further financially entangle these parties when not necessary and the court finds that entanglement is not necessary."

Based on those findings, the court entered a supplemental judgment that, among other things, awarded husband half of the then-current value of wife's OSGP account, eliminated the overage provision "in its entirety from the divorce judgment retroactive to April 1, 2010," and maintained the requirement that husband pay wife $1,000 per month as spousal support until she reaches age 67.

With respect to husband's spousal support obligation, we understand wife to be making the following arguments on appeal. First, she contends that the trial court could not properly modify husband's spousal support obligation without finding that enforcement of that obligation "would violate the law or would clearly contravene public policy." ORS 107.104(1)(b). Second, wife argues that the court could not modify husband's spousal support obligation "because husband failed to allege, much less prove, the 'substantial change in economic circumstances' necessary to terminate <u>maintenance</u> support or the 'involuntary, extraordinary and unanticipated change in circumstances that reduces the earning capacity of the paying spouse,' necessary to terminate <u>compensatory</u> support." (Underscoring in original.) Third, wife argues that husband "failed to state a claim for relief" when he alleged, in his counterclaim, that "spousal support should be terminated, based on [wife] providing misleading information following the parties' dissolution * * *." Fourth, although wife acknowledges that "it may be an appropriate goal to disentangle divorcing parties," that goal did not justify modifying the terms of the stipulated judgment of dissolution. We address those arguments in the order presented.

Wife's first argument is based on the legislative policy choice favoring settlement of divorces, as reflected in ORS 107.104(1), which provides:

"It is the policy of this state:

"(a)  To encourage the settlement of suits for marital annulment, dissolution or separation; and

"(b) For courts to enforce the terms of settlements described in subsection (2) of this section [describing, among other things, stipulated judgments] to the fullest extent possible, except when to do so would violate the law or would clearly contravene public policy."

Wife contends that, because husband did not establish that the overage provision in the 2004 stipulated judgment violated the law or contravened public policy, the trial court lacked authority to eliminate that part of husband's spousal support obligation.

Wife's argument ignores ORS 107.135, which authorizes trial courts to modify the spousal support provisions of dissolution judgments if certain requirements are met:

"(3) In a proceeding under this section to reconsider the spousal or child support provisions of the judgment, the following provisions apply:

"(a) *A substantial change in economic circumstances* of a party, which may include, but is not limited to, a substantial change in the cost of reasonable and necessary expenses to either party, *is sufficient for the court to reconsider its order of support*, except that an order of compensatory spousal support may only be modified upon a showing of an involuntary, extraordinary and unanticipated change in circumstances that reduces the earning capacity of the paying spouse."

(Emphasis added.)

Nothing in ORS 107.135 limits courts' authority to modify stipulated dissolution judgments. Nor does anything in ORS 107.104(1) suggest that the legislative policy favoring settlement means that courts may modify stipulated dissolution judgments only when the terms of those judgments violate the law or clearly contravene public policy. To the contrary, ORS 107.104(4) provides that nothing in subsections (2) or (3) of that statute (regarding procedures for enforcement of stipulated judgments and other settlements) "limits a party's ability, in a separate proceeding, to file a motion to set aside, alter or modify a judgment under ORS 107.135 * * *." *See Beebe and Beebe*, 244 Or App 44, 48, 260 P3d 601 (2011) ("[E]ven where parties have stipulated to an

initial spousal support award, nothing limits their ability to file a motion to modify the award under ORS 107.135."). Moreover, we repeatedly have held that modification of support provisions in stipulated judgments is appropriate if the ORS 107.135 requirements are satisfied. *See, e.g.,* *Luty and Luty*, 245 Or App 393, 400-01, 263 P3d 1067 (2011) ("termination of husband's spousal support obligation," which was included in a stipulated dissolution judgment, was "just and equitable under the totality of the circumstances"). We find no authority supporting wife's argument that the trial court could not modify the spousal support provisions of the stipulated dissolution judgment unless those provisions violated the law or clearly contravened public policy.

Wife's second and third arguments relate to the adequacy of husband's pleadings and the trial court's authority to modify the spousal support provisions of the stipulated judgment in husband's favor. Wife begins by complaining that husband neither alleged nor proved that a substantial change in circumstances had occurred since the stipulated dissolution judgment was entered, as ORS 107.135(3)(a) requires as a prerequisite to modification of maintenance spousal support. In response, husband points out that wife herself alleged and established a substantial change in circumstances sufficient to trigger the trial court's modification authority. Once a change in circumstances has been established, husband argues, the court may decide "what spousal support is 'just and equitable,'" regardless of whether the party who initially sought modification is the same party who will benefit from whatever modification the court orders.[3]

---

[3] Noting that the 2004 stipulated dissolution judgment awards wife "compensatory support and maintenance support" without distinguishing between the two, wife also asserts that husband did not attempt to establish the sort of "involuntary, extraordinary and unanticipated change in circumstances that reduces the earning capacity of the paying spouse" that must be proved before a *compensatory* support award can be modified. ORS 107.135(3)(a). However, as wife acknowledges in her reply brief, she never argued to the trial court that the overage provision constituted a form of compensatory support; nor did she argue that the trial court could not modify the overage provision (or any other aspect of the spousal support provision) unless husband pleaded and proved circumstances meeting the associated "involuntary, extraordinary and unanticipated change" standard. Accordingly, any argument based on that standard is not preserved for our review.

We agree with husband. A showing of a "substantial change in economic circumstances of a party * * * is sufficient for the court to reconsider its order of support," other than compensatory spousal support. ORS 107.135(3)(a). Here, wife pleaded and proved that such a change in circumstances had occurred. Once that was established, the trial court had authority to determine what was "just and equitable under the totality of the circumstances." *Luty*, 245 Or App at 399. The statutes do not require *both* parties to establish a change in circumstances when, as here, they both seek modification.

In her third argument, wife contends that husband "failed to state a claim for relief" in his counterclaim because his allegation that his spousal support obligation should be terminated "based on [wife] providing misleading information following the parties' dissolution" urged the trial court to violate the principle that a court may not reduce a support obligation as punishment for a party's bad behavior. We pause to note what wife does *not* argue on appeal (and did not argue below). She does not contend that we should reverse the trial court's judgment on the ground that the court erred by basing its modification of husband's support obligation in whole or in part on its view that wife should be sanctioned for failing to disclose her OSGP account and hiding income in 2005 and 2006. That is, wife does not argue that the trial court took improper considerations into account when it considered what modification, if any, of husband's support obligation would be just and equitable under ORS 107.135. Rather, wife's argument is purely procedural. She contends that, because husband did not *plead* a proper basis on which spousal support could be terminated, the trial court lacked authority to modify his support obligation. Husband responds that he gave wife adequate notice of his desire to have the overage provision terminated, and he suggests that, given the equitable powers of a court presiding over dissolution proceedings, no more formal pleading was required.

Again, we agree with husband. As an initial matter, it is true that husband asserted in his counterclaim that his spousal support obligation "should be terminated based

on [wife] providing misleading information following the parties' dissolution of marriage on November 4, 2004." But earlier in the proceedings, husband had responded to wife's motion for a show-cause order, in part, by arguing that, if a substantial change in circumstances justifying modification of spousal support had occurred, the trial court should eliminate the overage portion of the stipulated judgment. He did not there urge the court to make that modification as a form of punishment. And in his hearing memorandum, husband presented additional information supporting his counterclaim, including that wife's hiding of income and assets, along with her failure to put the marital home on the market in 2007, had allowed her to make significant contributions to her retirement accounts, giving her income that would allow her "to retire and live comfortably for the rest of her life." In that document, husband argued that the trial court should either eliminate the spousal support obligation entirely or eliminate just the overage clause.

Thus, although husband's counterclaim—in which he sought modification of his support obligation—arguably alleged an impermissible basis for that desired change, husband repeatedly put wife on notice, more generally, that he wanted the trial court to eliminate or reduce his spousal support obligation if a substantial change in circumstances was proved. In the context of a modification proceeding, where the court's "overarching consideration" is "what is just and equitable under the totality of the circumstances," *Luty*, 245 Or App at 399, more precise pleading is not required. *See Triperinas and Triperinas*, 185 Or App 283, 290, 59 P3d 586 (2002) ("[W]hether or not a specific kind of relief is pleaded, a court exercising jurisdiction over the dissolution of a marriage has the authority to grant the relief authorized by statute in order 'to do equity,' so long as the parties have a fair opportunity to be heard."). We therefore reject wife's procedural argument, *i.e.*, her contention that husband did not adequately plead a claim for modification of his spousal support obligation.[4]

---

[4] Because we disagree with wife's argument that the trial court erred procedurally by modifying the spousal support provision in husband's favor, we need not address wife's contention that she was prejudiced by that alleged error.

Moreover, even if wife reasonably could be understood to argue that the trial court erred *substantively* because it reduced husband's support obligation as punishment for her failure to disclose certain income and assets, we would reject that argument as well. We acknowledge that courts generally should not use support awards as "vehicle[s] by which a spouse may be punished for unrelated opprobrious conduct." *Garza and Garza*, 201 Or App 318, 329, 118 P3d 824 (2005). Here, however, no impermissible punishment is apparent on the face of the supplemental judgment. To the contrary, the trial court noted that it had considered sanctioning wife for her failure to disclose the OSGP account, but had decided *not* to do so.

Nor is punishment implicit in the terms of the supplemental judgment. Rather, the trial court's decision to eliminate the overage provision appears to have been based on several findings, namely that (1) that wife's failure to disclose her OSGP at the time of the 2004 dissolution and her failure to disclose all of her income in 2005 and 2006 had allowed her to make significant contributions to retirement accounts, giving her more income opportunities than she otherwise would have had; (2) absent those failures to disclose, husband "could well have moved to end spousal support as well as substantially reduce his child support obligation"; (3) wife's ability to contribute to her retirement accounts was increased by her failure to put the marital home on the market, which saved her the expense of rent or a mortgage for some period of time; (4) because of wife's failure to cooperate in selling the house, husband was forced to spend money from his retirement accounts to replace income he otherwise would have realized from the home's sale; (5) wife could meet her living expenses between drawing "investment income from her retirement accounts without invading the principal," continuing to receive $12,000 per year from husband in support, and finding employment that pays the same amount she received in unemployment benefits ($25,620 per year), and could live more lavishly if she also drew Social Security or PERS benefits; and (6) at least in part as a result of wife's actions, husband "is over $500,000 behind [wife] in retirement accounts." Based on those findings, the trial court determined that it was

"appropriate to eliminate the overage provision" from the stipulated judgment, given the desirability of not further financially entangling the parties.

The trial court did not err in determining that elimination of the overage provision was just and equitable under those circumstances. We do not read the supplemental judgment as indicating that the court was punishing wife for her failure to disclose assets and income, or for her failure to cooperate with selling the marital home. Rather, we understand the court to have assessed what continuing financial obligation husband should have to wife, in light of her income opportunities having been enhanced through means that had decreased husband's prospects for retirement. *Cf. Steele and Steele*, 254 Or App 79, 84-85, 293 P3d 1077 (2012) (finding "no indication that the [trial] court awarded compensatory spousal support as a punitive measure" where, read in context, the court's findings of one party's "financial misconduct" referred "to the effect of those actions on the marital estate, as well as on [the other party's] employment prospects"). The court's decision to terminate the overage provision—which ended only *part* of husband's support obligation, and which also extinguished any future obligations that wife might have had under the provision, if she obtained high-paying employment—fell within the range of permissible options available to the trial court once it determined that husband's support obligation should be modified.

Finally, wife argues that the trial court's goal of "disentangl[ing] divorcing parties," although appropriate, cannot justify "rewrit[ing] their stipulated judgment of dissolution *** or *** modify[ing] spousal support ***." As explained above, however, the trial court considered several factors in determining what spousal support obligation husband should continue to have toward wife, given their changed circumstances. The trial court's desire "to not further financially entangle these parties" was just one of those factors, and the record amply justifies the court's decision to remove a provision that made the parties' support obligations dependent on periodic mutual disclosure of their financial situations. *See Bushell and Bushell*, 122 Or App 43, 48, 857 P2d 174 (1993) ("To the extent possible, the financial

affairs of parties to a dissolution should be disentangled as expeditiously as possible.").

In sum, wife has not established that the trial court erred procedurally or substantively when it modified husband's spousal support obligation by removing the over-age provision. Accordingly, we affirm.

Affirmed.