## In the Matter of the Marriage of

### Lourdes GARZA,
*Respondent,*

*and*

### Charles GARZA,
*Appellant.*

### 0112-74233; A120014

118 P3d 824

Appeal from Circuit Court, Multnomah County.

Jan Wyers, Judge.

Arthur B. Fowler argued the cause for appellant. On the briefs were Gary M. Bullock and Bullock & Regier, P.C.

Jacqueline L. Koch argued the cause for respondent. With her on the brief was Koch & Deering.

Before Landau, Presiding Judge, and Brewer, Chief Judge,* and Armstrong, Judge.

LANDAU, P. J.

---

* Brewer, C. J., *vice* Leeson, J. pro tempore.

**LANDAU, P. J.**

Husband appeals a dissolution judgment that, among other things, requires him to pay wife a "combined" award of child and spousal support in the amount of $2,000 per month for 36 months and awards wife $10,000 in attorney fees. He argues that the support award is unreasonable and that the attorney fee award is unreasonable as well. We agree that, on the facts of this case, the portion of the combined support award that pertains to spousal support is excessive. We therefore reverse and remand for entry of an amended judgment awarding spousal support of $1,000 per month for the remainder of the 36 months provided in original judgment. Our decision on the spousal support award also requires that we reverse the child support award and remand for reconsideration. Finally, we conclude that our decision concerning the support awards requires that we vacate the attorney fee award and remand that award for reconsideration as well.

Based on the evidence in the record, we find the following facts on *de novo* review. Wife was born and raised in the Philippines. She completed high school there, as well as two years of secretarial training. Husband is an American citizen. He did not complete high school. In 1988, he began manufacturing wooden pallets in the back yard of an acquaintance. In the early 1990s, he became the sole owner of the business, Eagle Heart Pallet, Inc. (EHP). Since that time, he has continued to build pallets, as well as to drive delivery trucks for the company.

The parties were married in the Philippines in October 1994. At that time, wife was 30 years old and husband was 41. Wife remained in the Philippines for a year, joining husband in the United States in 1995. When she first came to the United States, she was employed as a housekeeper at a motel.

The parties' daughter was born in April 1997. After the parties' daughter was born, wife stayed home for two years. At the time of trial, she was employed full time through a temporary agency doing assembly work; her wage was $8.50 an hour.

Sometime in the late 1990s, husband was diagnosed with Parkinson's disease. He began treatment by a neurologist, Dr. Mertens, in September 2000. Mertens testified that medications prescribed for Parkinson's "can sometimes make you cranky" and can cause drowsiness. Mertens predicted that husband's Parkinson's would allow him to function independently for approximately five to eight years; he doubted that husband could perform a "physical" job for five more years.

Husband's brother-in-law, Whitney, was employed as an accountant for various companies from around 1965 to around 1990, after which he changed careers and became a carpenter. In early 2001, he began working at husband's company, originally assisting with manufacturing operations and eventually organizing the company's accounts, many of which were overdue. Whitney arranged payment schedules with various creditors, including a lumber supplier, the IRS, and the State of Oregon. The agreement with the IRS required that Whitney "run the company," including exercising exclusive check-signing authority; it also specified that husband had no authority with respect to operation of the business and was to receive no property or funds from it except for $3,750 per month in salary. Whitney testified that those arrangements arose because husband's behavior was "rather erratic" during the relevant time period but that, beginning in March 2002, his behavior, thought processes, and speech improved. Whitney also testified that he later reduced husband's salary to $2,100 per month in order to "have him make a contribution towards" the taxes owed to the IRS.

In Whitney's opinion, husband was a "very good salesman," but he was "incapable of operating the books." According to Whitney, some of the company's debts were being paid out of "creative financing" of husband's mother's residence; as a result, the company owed husband's mother $93,000. Whitney testified that the company's total debt at the time of trial, including money owed to the IRS, the State of Oregon, husband's mother, and business creditors, was approximately $350,000.

A certified public accountant, Kyllo, testified that he had served as EHP's accountant since February 2001. At that time, EHP had not filed tax returns since 1994. At the time of trial, the company owed $107,000 in federal taxes and $25,000 in state taxes, for both of which Kyllo had negotiated a monthly payment schedule of, respectively, $3,200 and $2,000. The company also owed $200,000 to vendors. Kyllo testified that, at the time of trial, the company's liabilities exceeded its assets and that, as a result, the company had a value of zero. He testified that husband had "[v]ery little" concept of accounting practices and that Whitney was currently "running the business." Kyllo had "serious doubt" that the business would still be operating a year from the time of trial.

Husband and wife also testified at trial. Husband testified that, around 1997 and 1998, he was "involved in a lot of domestic violence." Wife obtained restraining orders against husband in 1998 and 1999; on at least one occasion, husband was arrested for violating an order. Husband testified that, in the fall of 2001, his gambling behavior "really got bad" and that he gambled with company money. In 2001 or 2002, husband was convicted of assault in the fourth degree based on an incident in which he grabbed wife by the neck, leaving marks.

Wife testified that husband gambled at casinos and that there was "physical violence" during the marriage, in regard to which the police were called "[m]any times." She testified that, after she obtained a restraining order against husband, he attended two sessions of anger management training.

The trial court awarded wife custody of the parties' child. It awarded wife the family residence and most of the parties' personal property. It awarded husband all interest in the business and some personal property, and ordered that he assume the parties' credit card obligations.

The court also awarded wife a "combined" support award of $2,000 per month. The court explained that, after hearing the foregoing evidence and the parties' arguments, it believed that husband's company was not a separate entity

from husband and that, even assuming that husband's nominal income was $2,100 per month, he apparently had access to corporate money for gambling purposes. The court also stated that it did not make sense that husband could "take $90,000 and blow it and be solvent" if there were not other funds available. The court ordered that husband pay support for 36 months. At the end of that time, spousal support would terminate and child support would be recalculated. The dissolution judgment states that the spousal support "may be considered compensatory" and finds that it was based on the parties' relative earning capacities, needs, and resources; on husband's "waste of marital assets"; and on husband's "mistreatment of [wife] after having brought her to the United States from the Philippines." The judgment also recites that it attaches and incorporates by reference an Oregon Child Support Guidelines Worksheet. *See* OAR 137-050-0330 (setting out steps in procedure to determine amount of child support owed by parent).[1]

In turn, the worksheet recites that wife's gross monthly income is $1,473 and that husband's gross monthly income is $2,100. The worksheet states that husband is to pay wife $1,950 per month in spousal support, resulting in a "subtotal gross income" and, ultimately, an "adjusted gross monthly income" for wife of $3,423 and $150 for husband. The worksheet next states that the total child support obligation for both parents is $499 and allocates $478.05 of that amount to wife and $50 to husband. *See former* OAR 137-050-0470 (notwithstanding a parent's gross income, it is a rebuttable presumption that a noncustodial parent has the ability to pay at least $50 per month).[2] The worksheet then adjusts husband's child support amount in consideration of health insurance costs of $200 per month, deducting $191.60 of those costs from husband's child support obligation. The worksheet concludes that husband's "total presumed [child] support" obligation is negative $141.60. Neither the judgment nor the worksheet states any findings in support of the trial court's rebuttal of the total presumed child support

---

[1] References to statutes and rules are to the versions in effect on November 6, 2002, the date of the amended judgment.

[2] OAR 137-050-0470 apparently has been repealed.

amount of negative $141.60. Nevertheless, we understand the trial court's "combined" award of $2,000 to consist of the $50 minimum child support amount provided in *former* OAR 137-050-0470 plus the trial court's spousal support award of $1,950. In a supplemental judgment, as noted, the trial court awarded wife $10,000 in attorney fees. Husband appeals from those judgments.

■       As an initial matter, we consider whether the trial court's dissolution judgment is in a reviewable form. The applicable statutes require the trial court to specify awards of child support and spousal support. Under ORS 25.275 to 25.280, the court determines an amount of child support that is presumed correct by application of guidelines promulgated by the Oregon Department of Justice; the trial court may then determine that the presumption has been rebutted by applying various factors. The Child Support Guidelines, in turn, set out a formula for calculating the presumed amount of child support, OAR 137-050-0330, including a determination of each parent's adjusted gross income, the "basic child support obligation" for the child, each parent's share of the obligation, and other calculations. The guidelines also provide that, if the court believes that the correctness of the resulting presumed amount has been rebutted, "[b]oth the presumed correct amount and the new amount, in variance from the guidelines, shall be recited as part of findings which explain the reason for the variance," OAR 137-050-0330(2)(a). In addition, the guidelines provide:

> "If the child support presumption is rebutted pursuant to subsection (2)(a) of this rule, a written finding or a specific finding on the record must be made that the amount is unjust or inappropriate. That finding must recite the amount that under the guidelines is presumed to be correct, and must include the reason why the order varies from the guidelines amount. A new support amount shall be calculated by determining an appropriate dollar value to be attributed to the specific criteria upon which the finding was based and by making an appropriate adjustment to the calculation."

OAR 137-050-0330(2)(b). As for spousal support, ORS 107.105(1)(d)(A) provides that, in making an award, the

court must designate one or more categories of spousal support and make findings of the relevant factors in the decision.

In this case, as we have described, the trial court awarded a "combined" support amount of $2,000 per month. In light of the statutory requirements that apply to child support awards and spousal support awards, it is doubtful that "combined awards" are permissible. *See Vinson and Vinson*, 83 Or App 487, 491, 732 P2d 79, *rev den*, 303 Or 332 (1987) (noting, even before enactment of child support statute, that there is no statutory provision for combined awards). At a minimum, a dissolution judgment "must be fashioned in a manner which accommodates appellate review with respect to the sufficiency of both [child support and spousal support]." *Id.*

Nevertheless, as we also have noted, based on the child support worksheet incorporated in the judgment and on OAR 137-050-0470, providing for a rebuttable presumption that a noncustodial parent has the ability to pay a minimum of $50 per month in child support, we understand the "combined" award to consist of $1,950 in spousal support and $50 in child support. We therefore turn to the merits of husband's challenge to the award.

■      Husband first argues that, where the court determined that his income was only $2,100 per month and where the court awarded all of the marital assets to wife and all of the marital debts to husband, it was error to order him to pay combined spousal and child support in the amount of $2,000 per month plus $200 in insurance costs. Husband does not argue that wife failed to meet the criteria for an award of compensatory spousal support. Rather, he argues, in effect, that he lacks the ability to pay spousal support and that such support is unwarranted in light of the trial court's division of the parties' property.

In response, wife treats husband's assignment of error as primarily a challenge to the amount of spousal support, which, as noted, constituted $1,950 of the "combined" support award of $2,000. In regard to that amount, wife argues that spousal support properly is based not only on the obligor's ability to pay but also on the needs of the obligee and that she has limited earning potential. She also argues that

she contributed to the "economic and emotional life of the family" in that she both worked outside the home and took sole responsibility for the home and the parties' child; and that, without that contribution, husband would have been unable to invest long hours in his business. Finally, wife argues that there was insufficient evidence that husband lacked the ability to pay the combined amount awarded because the trial court implicitly found that husband had the ability to borrow money; according to wife, the trial court properly could consider not just husband's actual income but his potential income.

■■    We review the trial court's award of spousal support *de novo*, ORS 19.415(3), to determine whether it meets the guidelines for the relevant category of support as established by the legislature, including the goal of economic self-sufficiency. *See, e.g., Roppe and Roppe*, 186 Or App 632, 636, 64 P3d 1145 (2003). We agree with husband that the award that primarily is at issue here is a compensatory spousal support award of $1,950 for 36 months. ORS 107.105(1)(d)(B) provides that compensatory spousal support is appropriate

> "when there has been a significant financial or other contribution by one party to the education, training, vocational skills, career or earning capacity of the other party and when an order for compensatory spousal support is otherwise just and equitable in all of the circumstances. The factors to be considered by the court in awarding compensatory spousal support include but are not limited to:
>
> "(i)    The amount, duration and nature of the contribution;
>
> "(ii)   The duration of the marriage;
>
> "(iii)  The relative earning capacity of the parties;
>
> "(iv)   The extent to which the marital estate has already benefited [*sic*] from the contribution;
>
> "(v)    The tax consequences to each party; and
>
> "(vi)   Any other factors the court deems just and equitable."

Thus, to be eligible for an award of compensatory spousal support, a party must show that he or she made a "significant

financial or other contribution * * * to the education, training, vocational skills, career or earning capacity of the other party." ORS 107.105(1)(d)(B). Even if the spouse meets that threshold requirement, the trial court may make an award only if it is just and equitable in all the circumstances, including the factors set out in the statute. *Austin and Austin*, 191 Or App 307, 314, 82 P3d 170 (2003).

Husband does not argue that wife is not entitled to an award of compensatory spousal support at all. Specifically, he does not argue that wife did not make a significant contribution in some respect—as relevant here, to husband's ability to engage in his business, that is, to his "career." We therefore do not address that issue. *Cf. Austin*, 191 Or App at 314-18 (contribution made by one spouse must be "significant" and must pertain to other spouse's education, training, vocational skills, career, or earning capacity).

We turn, then, to an examination of the amount of the award in light of the factors set out in ORS 107.105(1)(d)(B)(i) to (v) and then consider, under ORS 107.105(1)(d)(B)(vi), any other relevant factors.

We begin with the amount, duration, and nature of the contribution. ORS 107.105(1)(d)(B)(i). Wife bases her entitlement to compensatory spousal support on the fact that, by both working outside the home and assuming responsibility for the household and the parties' child, she "contributed to both the economic and emotional life of the family." It is at least debatable whether that is the nature of the contribution that is contemplated by the statute. *See Austin*, 191 Or App at 314 (statute's focus is on contributions to the other spouse's education, training, vocational skills, career, or earning capacity). Wife points to nothing in the record that links those contributions to husband's education, training, vocational skills, career or earning capacity; she simply contends that contributing to the economic life of the family suffices. On the other hand, husband does not contest wife's contention that she contributed to his career, and, certainly to the extent that wife's contributions at home enabled husband to develop the business, that pertains to the statutory factor of contributing to husband's "career."

We turn to the duration of the marriage. ORS 107.105(1)(d)(B)(ii). As we have noted, the parties were married for seven years.

Next, we consider the parties' relative earning capacities. ORS 107.107(1)(d)(B)(iii). In that regard, we note that we are not necessarily limited to consideration of the parties' actual incomes. *Hutchinson and Hutchinson*, 187 Or App 733, 741, 69 P3d 815 (2003). However, we are to be "circumspect about imposing a support award based on income not presently available." *Waterman and Waterman*, 158 Or App 267, 271, 974 P2d 256 (1999). When there is evidence of a party's actual income, it is incumbent upon the proponent of a higher income to demonstrate an ability to pay support based on a higher income. *Id.*

In this case, wife has secretarial training. At the time of trial, she was employed at a wage of $8.50 an hour or approximately $1,416 per month. Husband's situation is more complicated. The record shows that, at some time before trial, he had been receiving $3,750 per month in salary and that that amount purportedly had been reduced to $2,100 to enable the company to meet its debt payment schedule. However, the trial court discounted in part the credibility of the witnesses who testified as to the income-generating capacity of the business and the need to pay husband less in the way of a salary. In any event, either amount demonstrates that husband's earning capacity is substantially greater than wife's.

On the other hand, the undisputed evidence also shows that husband has less education than wife and, more importantly, that he suffers from a debilitating illness. As of the time of trial, his treating physician had predicted that husband would be unable to perform physical labor for more than five years. According to Whitney, husband's thinking processes had also been impaired at times, although more recently they had improved.

Next, we consider the extent to which the marital estate has already benefitted from wife's contribution to husband's business and career. ORS 107.105(1)(d)(B)(iv). Again, the record shows that wife worked for approximately four

years of the seven-year marriage as a housekeeper at a motel and doing assembly work. There also is evidence that, during the marriage, husband provided $3,000 toward the purchase or lease of a car for wife and that over $20,000 in furniture and appliances were purchased for the parties' residence through husband's credit accounts; the trial court awarded all of that property to wife. Thus, at least to some extent, the marital estate has already benefitted from husband's business endeavors. At the same time, the record also shows that husband gambled away at least $90,000 in business assets.

The record contains no information regarding the tax consequences of an award to wife of compensatory spousal support. ORS 107.105(1)(d)(B)(v).

Finally, we consider any other relevant factor as provided in ORS 107.105(1)(d)(B)(vi). In particular, we consider whether husband's "mistreatment" of wife is a proper basis of compensatory spousal support. The trial court regarded the factor as relevant. We do not. As we have noted, the focus of the statute is on compensation for wife's contributions to husband's education, training, vocational skills, career, or earning capacity. *Austin*, 191 Or App at 314. It is not a vehicle by which a spouse may be punished for unrelated opprobrious conduct.

We do, however, consider relevant husband's expenses and ability to pay support. As we have stated on a number of occasions, a spousal support obligation that exceeds the paying spouse's ability to pay is excessive. *Taylor and Taylor*, 136 Or App 416, 419-20, 902 P2d 120 (1995); *Sigler and Sigler*, 133 Or App 68, 71-72, 889 P2d 1323 (1995). In this case, husband reports approximately $2,300 in monthly personal expenses, and wife does not dispute those obligations.

Weighing all of the described factors, we conclude that an award of compensatory spousal support to wife in the amount of $1,000 per month for 36 months is just and equitable. In our view, a higher amount is not justified in light of husband's income—even assuming that he earns $3,750 per month—and the relatively short duration of wife's contributions to husband's career.

Wife argues that we should assume that husband has the capacity to borrow—and, hence, pay—more but there is no evidence to support that assumption. As we have noted, once there is evidence of an obligor's actual income, it is incumbent on the obligee to demonstrate an ability to pay more. *Waterman*, 158 Or App at 271. Wife did not meet that burden in this case.

Husband, on the other hand, insists that his limited income and poor health justify eliminating the support obligation altogether. We disagree. As discussed above, husband's income, even if it is limited as husband would like us to believe, exceeds that of wife. Moreover, we—like the trial court—cannot ignore the fact that husband essentially squandered a substantial portion of the value of the business on his gambling debts, depriving wife of any share in the fruits of the family's economic labors. As for husband's physical condition, we have taken that into account in limiting the duration of the support obligation to 36 months.

Because we have modified the amount of the spousal support award, and because the calculation of child support depends in part on the amount of spousal support, we must reverse and remand the portion of the judgment pertaining to child support, as well.

Husband also assigns error to the award of attorney fees. Because we have substantially modified the support award, we vacate the attorney fee award and remand for reconsideration of that matter as well.

Reversed and remanded for entry of judgment awarding compensatory spousal support of $1,000 per month for remainder of the 36-month period provided in original judgment; award of child support reversed and remanded for reconsideration; supplemental judgment for attorney fees and costs vacated and remanded for reconsideration; otherwise affirmed.