DEHOOG, J.
*1162 *533 Husband appeals a general judgment in which the trial court dissolved the parties' long-term marriage, distributed their assets and debts, awarded wife both spousal support and child support for one child, and awarded child support directly to a second child who was attending school. Husband challenges those support awards in three assignments of error. The focus of each of husband's challenges, however, is on the trial court's calculation of his monthly income, which served as the basis of the court's spousal and child support awards. It is undisputed that the sole source of husband's income is a privately owned business, Validation Resources, LLC (VR), which is a successful scientific testing facility previously equally owned by husband and wife. In its property distribution, the trial court awarded VR to husband, but divided the value it attributed to the business-$ 2.8 million-equally between the parties; after taking into account the court's distribution of the parties' other assets and liabilities, wife's one-half interest in VR resulted in an equalizing judgment in the amount of $ 1,008,565, which the court ordered husband to pay wife over 14 years at a rate of $ 8,490.01 per month. Husband does not challenge that property division or resulting obligation on appeal. They are, however, central to husband's contentions on appeal. That, in part, is because, based largely on its award of VR solely to him, the trial court found husband's income to be $ 55,000 per month, from which it ordered husband to pay an additional $ 12,500 per month in spousal maintenance to wife, who is disabled and unable to work, and to pay child support totaling $ 1,844 per month. Other than a challenge to the trial court's factual findings, which we conclude have evidentiary support and will not disturb, husband's appeal of those support awards reduces to a single legal issue: whether, given that wife was awarded half the value of VR in the court's property distribution, the court erroneously attributed that business's entire income stream to husband in determining his monthly income for purposes of calculating spousal and child support. As explained below, however, husband did not raise that issue before the trial court, and husband's corresponding claims of error are therefore not preserved for appeal. ORAP 5.45(1). Accordingly, we affirm.
*534 As an initial matter, husband requests de novo review of the trial court's factual finding that his present monthly income is $ 55,000. However, husband's argument in favor of de novo review focuses solely on the significance of that finding of fact to the trial court's ultimate award; husband does not meaningfully address the other standards that guide our determination whether de novo review is warranted. As a result, we are not persuaded that this is an "exceptional case" justifying de novo review. ORS 19.415 (3)(b) (in an appeal in an equitable action, the court, "acting in its sole discretion, may * * * make one or more factual findings anew upon the record"); ORAP 5.40(8)(c) ("The Court of Appeals will exercise its discretion to *** make one or more factual findings anew on the record only in exceptional cases. Consistently with that presumption against the exercise of discretion, requests under paragraph (a) or (b) of this section are disfavored."). Consequently, "we are bound by the trial court's express and implicit factual findings if they are supported by any evidence in the record." Morton and Morton , 252 Or. App. 525, 527, 287 P.3d 1227 (2012). We recite the pertinent facts-many of which are undisputed-consistently with that standard.
Husband and wife married in 1988. At the time of trial in September 2015, Husband was 56 years of age and wife was 55. They have two children together, a son, J, who was age 19 and a college student at the time of trial, and a minor daughter, O, then age 15. Pursuant to an earlier stipulated limited judgment, wife has sole custody of O and husband has no parenting time with her. Prior to the parties' separation, the family enjoyed a very comfortable lifestyle.
Husband is a chemical engineer; he also holds a Master of Business Administration degree. He was in good health at the time of trial. In 2001, he founded VR, which tests and analyzes extractables and leachables for biopharmaceutical companies. Although wife was a 50 percent owner of VR during the *1163 parties' marriage, husband was its president and chief executive officer. In the recent years leading up to trial, VR provided substantially all of the *535 parties' income. As noted, the trial court valued VR at $ 2.8 million.
Wife has master's degrees in education and exercise science. She was employed full time as a professor at Central Oregon Community College until 2000, when she reduced her workload to care for the children. Wife left her job entirely in 2008, when she was diagnosed with a rare and difficult-to-treat form of non-Hodgkin's lymphoma. She underwent lengthy and challenging treatment, and she continues to have related health issues. The trial court found that wife is "medically and emotionally totally disabled" as a result of her bout with cancer and that her health insurance expenses and uninsured medical expenses for her ongoing care exceed $ 3,000 per month; those findings are not challenged on appeal.
In 2014, husband filed the petition for dissolution of marriage. At the parties' joint request, a reference judge was appointed to hear the case pursuant to ORS 3.305.[1] Over the course of a four-day trial in September 2015, the parties presented extensive evidence regarding husband's income and earning capacity, which, as noted, are the focus of husband's appeal. That evidence included testimony from VR's accountant, from wife's accounting expert, from the business appraiser who had conducted a business valuation of VR at the joint request of the parties, and from husband himself, as well as associated financial records, including VR's 2014 business tax return, a draft of the parties' 2014 personal income tax return, VR's profit and loss summary for the years 2010 through 2014, and a VR "Profit & Loss YTD Comparison," dated August 2015.
Following trial, the court issued a proposed decision. See ORS 3.315(1) (requiring, generally within 20 days after close of evidence, that reference judge provide the parties with a proposed written report containing the court's *536 findings of facts, conclusions of law, and judgment). The court found VR's value to be $ 2.8 million, awarded the business itself to husband, and awarded wife an equalizing judgment that reflected half of VR's assigned value. Specifically, taking into account its distribution of the parties' other assets and liabilities, including the parties' home and 12-acre property (which the court awarded to wife), wife's PERS account, a home equity line of credit, husband's 401(K) accounts, other credit and bank accounts, insurance policies, jewelry, horses, cars, and household goods, the court's proposed decision resulted in an equalizing judgment to wife of $ 1,008,565, which husband was required to pay in monthly installments of $ 8,490.01 over a 14-year period.
Notably, the court's proposed decision stated an initial finding that husband's earning capacity was $ 43,500 per month.[2] Using that income and the statutory child-support guidelines, the court calculated husband's obligation to be $ 848 per month, payable to wife, as child support for O, and $ 848 per month in child support payable directly to J, a child attending school. See ORS 107.108. Additionally, the court awarded wife indefinite spousal maintenance support in the amount of $ 12,500 per month.[3]
Husband filed written objections to the proposed decision and requested a hearing.
*1164 See ORS 3.315(2), (3) (any party may file written objections and suggested modifications or corrections to the reference judge's proposed report; if requested, the reference judge must conduct a hearing on the proposed objections before preparing the final written report and judgment). Regarding the court's assessment of his income, husband argued:
"The [reference judge's] letter opinion found that Husband's gross monthly income was $ 43,500 per month. However, as he testified at trial, his available income to pay support and *537 other obligations is substantially lower, because he pays the sum of $ 14,000 per month on existing loans and capitalized leases, so this income is not available to him. Therefore, his true gross monthly income is $ 29,500 per month. This figure should be used by the court in both the child support calculation and in reducing the spousal support award to Wife. Even if his gross monthly income is considered to be $ 43,500 per month, the child and spousal support obligations are over $ 14,000 per month and the property equalization award payment is over $ 8,500 per month for a total payment of over $ 22,500 per month. Considering that he then has $ 14,000 in business debt payments, and $ 13,000 in state and federal and payroll tax obligations, he will have a negative cash flow position before he even takes a salary to pay his own living expenses. Clearly, the current support and money awards as set forth in the proposed General Judgment set up Husband for a default on his obligations and financial ruin."[4]
At the hearing on husband's objections, husband clarified that he was not questioning the court's factual finding that his income was $ 43,500; rather, he was contending that, because he had $ 14,000 in monthly debt payments that had not been accounted for in calculating the net income of the business, $ 29,500 "would be a better figure to use for *** income that's actually available for paying support." In other words, husband emphasized that it was not "an income issue but a cash flow issue," offering the explanation that the reason the loans did not appear on VR's profit and loss statement was because they were principal-only payments. Husband did not challenge the court's valuation of VR or its distribution.
Wife responded that the evidence presented at trial showed husband's monthly income to be approximately $ 67,000 per month, rendering the court's figure of $ 43,500 "actually low." As for husband's argument that the $ 43,500 figure had failed to account for his monthly debt obligation on behalf of VR, wife's counsel contended that he had "impeached [that] very argument" at trial.
*538 Nonetheless, the court agreed to further consider the question of husband's and wife's income-in particular, husband's argument that the court had not properly accounted for husband's obligation to make monthly payments of $ 14,000 to pay for VR's business debt. The court permitted the parties to submit post-hearing memoranda and supporting excerpts from the trial transcript, which the court reviewed before rendering its final decision.[5]
In its final written report and judgment-which included further findings and conclusions-the court rejected husband's argument that its monthly income figure had erroneously failed to account for husband's monthly debt payments, explaining that it was "disregarding husband's newly suggested cash flow analysis as it appears to be disingenuous and self-serving." The court specifically found that
"[h]usband's testimony, as well as the financial representations in his exhibits, is consistently inconsistent and inaccurate at least when it comes to his alleged income and expenses. Indeed his evidence on these issues appears to be intentionally misleading. Accordingly, I have come to view husband's testimony on financial matters with grave mistrust."
*1165 Referencing specific trial exhibits and testimony, the court found that husband's earning capacity was "well documented to be at least $ 55,000 per month," a figure it viewed as "very conservative."[6]
Despite increasing its estimate of husband's monthly earnings from $ 43,500 to $ 55,000, the court adhered to its proposed order requiring husband to pay wife $ 12,500 in monthly maintenance support. In addition to relying on the earning disparity it had found between the parties, the court also reasoned that, because husband has no overnights with *539 the children, wife "must devote more of her time and energy to the children" and, with the exception of husband's child support payments and his obligatory contribution to any medical expenses the children may incur, wife was solely responsible for supporting all of their daily expenses and activities.[7] The court also expressly recognized wife's significant health issues and the costs she incurred paying for health insurance and her out-of-pocket expenses for ongoing medical care.
The trial court did, however, use the updated income figure of $ 55,000 to recalculate husband's monthly child support obligation under the statutory guidelines, resulting in child support in the amount of $ 922 for each child. The court did not otherwise materially alter the terms of the proposed judgment in any way relevant here. The court subsequently filed its final written report and judgment, which husband now appeals.[8]
In his first assignment of error, husband contends that "[t]he evidence does not support the Court's finding that Husband could earn $ 55,000 per month." That contention suggests a challenge to the legal sufficiency of the evidence. However, other than one argument that husband also makes in connection with his second assignment of error-an argument we address below, see 297 Or. App. at 543 n. 11, 443 P.3d at 1167 n.11-husband's briefing in support of his first assignment consists almost entirely of argument that, in his view, the trial court must have misinterpreted the record in assessing his income. In effect, he urges us to reassess the evidence, that is, to reweigh the facts found by the trial court.[9]
*540 Had husband persuaded us to exercise de novo review in this case, we might consider those arguments. Because he did not, however, our review as to the court's factual finding of husband's income is limited to whether there is any evidence in the record to support that finding. See, e.g. , Berg and Berg , 250 Or. App. 1, 2, 279 P.3d 286 (2012) (except in those exceptional cases where de novo review is warranted, we review trial court's findings in connection with an award of spousal support for any evidence in the record).
Here, the testimony and financial records at trial do support the finding that husband's monthly income is $ 55,000, and, other than a passing reference to the "any evidence" standard of review, husband does not really argue otherwise. That is, husband does not seriously contend that there is an absence of *1166 evidence to support that finding. Rather, as we understand it, husband's argument is that the evidence is legally insufficient to support that finding because the trial court must have misunderstood it. However, husband has not identified anything in the record that compels a different understanding and, therefore, compels a contrary finding -that is, a finding that his income was less than the trial court found-as husband must do to prevail on that argument.
In short, husband does not articulate any argument that does not involve reconsidering the facts found by the trial court. Ultimately, rather than contend that there is no evidence from which a factfinder could find that his monthly income from VR is $ 55,000, husband simply urges us to evaluate the evidence differently than the trial court did, which we cannot do here.[10]
Husband next assigns error to the trial court's award of $ 12,500 per month in spousal maintenance support. To *541 provide context for that assignment of error, we first set out the pertinent legal framework.
ORS 107.105(1) governs a trial court's support awards; as relevant here, it provides:
"Whenever the court renders a judgment of marital annulment, dissolution or separation, the court may provide in the judgment:
"* * * * *
"(d) For spousal support, an amount of money for a period of time as may be just and equitable for one party to contribute to the other, in gross or in installments or both. *** In making the spousal support order, the court shall designate one or more categories of spousal support and shall make findings of the relevant factors in the decision. The court may order:
"* * * * *
"(C) Spousal maintenance as a contribution by one spouse to the support of the other for either a specified or an indefinite period. The factors to be considered by the court in awarding spousal maintenance include but are not limited to:
"(i) The duration of the marriage;
"(ii) The age of the parties;
"(iii) The health of the parties, including their physical, mental and emotional condition;
"(iv) The standard of living established during the marriage;
"(v) The relative income and earning capacity of the parties, recognizing that the wage earner's continuing income may be a basis for support distinct from the income that the supported spouse may receive from the distribution of marital property;
"(vi) A party's training and employment skills;
"(vii) A party's work experience;
"(viii) The financial needs and resources of each party;
"(ix) The tax consequences to each party;
*542 "(x) A party's custodial and child support responsibilities; and
"(xi) Any other factors the court deems just and equitable."
We review the trial court's ultimate determination as to what amount of spousal support is "just and equitable" for abuse of discretion. Bailey and Bailey , 248 Or. App. 271, 275, 273 P.3d 263 (2012). Thus, "[w]e will uphold a support award if, given the findings of the trial court that are supported by the record, the court's determination that an award of support is 'just and equitable' represents a choice among legally correct alternatives." Andersen and Andersen , 258 Or. App. 568, 570, 310 P.3d 1171 (2013) (some internal quotation marks omitted). No one factor is dispositive. Arand and Arand , 182 Or. App. 368, 374, 49 P.3d 799 (2002). In a long-term marriage such as this one, the primary goal of spousal maintenance is to *1167 provide a standard of living comparable to that enjoyed during the marriage. Mallorie and Mallorie , 200 Or. App. 204, 219-20, 113 P.3d 924 (2005), rev. den. , 340 Or. 18, 128 P.3d 1122 (2006).
Husband's second assignment of error specifically contends that "[t]he award of $ 12,500 per month spousal support is not just and equitable, considering Husband's income, and Husband's other obligations." He does not, however, explain why, under the statutes and case law, that is so. He does not, for example, address the statutory factors governing the court's exercise of discretion and clearly articulate how the proper application of each or any of those factors would compel a different result. See Berg , 250 Or. App. at 2, 279 P.3d 286 ("We will not disturb the trial court's discretionary determination unless the trial court misapplied the statutory and equitable considerations required by ORS 107.105."). Instead, husband's argument in support of his second assignment consists largely of a litany of case quotations and broad legal principles, without any indication as to how the cited cases apply here or lead to the conclusion that an award of $ 12,500 per month in spousal support in this case does not "represent a choice among legally correct alternatives."
*543 As best we can discern, the only cognizable argument presented by husband's second assignment of error-that is, the only argument that is not dependent upon de novo review of the facts-is that the trial court erred in basing wife's spousal support on husband's projected income from VR, when the court had already awarded half the value of those earnings to wife in the property division; in other words, it was outside the range of the trial court's discretion to "double-count" the income stream from VR in wife's favor-once, in awarding her half the value of the income stream in an equalizing judgment and, a second time, by using the full value of that income stream as husband's income for purposes of determining her spousal support award.
Specifically, husband contends in his opening brief:
"The value of [VR] ultimately is divided equally between Husband and Wife as part of the property division. Since the future income of [VR], over and above compensating Husband for his ongoing efforts, is already divided between the parties in advance, it should not be counted a second time as part of Husband's income.[11 ]
"Husband's support obligation should be based on his ability to earn $ 200,000 per year ($ 16,667 per month).[12 ] Additional income that he has historically received and will continue to receive in the future as owner of [VR] is in the nature of property interests which he and Wife have both received. Husband should not be required to pay support from the property awarded to him[.]"
*544 Responding to wife's contention that our case law holds otherwise,[13] husband explores that argument somewhat further in his reply brief. He explains that, because the value of the business here was based "primarily on the expected future income of the business, not on the value of its assets," this case is distinguishable from other cases in which we have favorably discussed spousal support awards based on income received from businesses *1168 in which ownership has been divided between the parties. See Goebel and Goebel , 56 Or. App. 52, 641 P.2d 59 (1982) (explaining that a spouse's professional practice is a marital asset the value of which should be taken into account when making a property division even if the practice is the source of money to pay spousal support; the professional's "ability to earn income will not be diminished by so doing"); see also Baumgartner and Baumgartner , 95 Or. App. 723, 725, 770 P.2d 965, rev. den. , 308 Or. 382, 780 P.2d 735 (1989) (holding that the trial court erred in not considering the husband's dental practice a marital asset, although it was also the source of money for the husband to pay spousal support). Husband contends that those cases are not controlling because, in each instance, unlike here, "[n]either Wife's share of the business as property nor her support award was based on the total income of the business itself."[14]
We understand husband's contention to be that the portion of VR's appraised value that was based on its likely future earnings and awarded to wife as property cannot, as a matter of law, be included in husband's income for purposes of determining a "just and equitable" amount of spousal support. And, consequently, the trial court abused its discretion in awarding the amount of support that it did.[15] Although there is a logical appeal to husband's argument-aspects of which our earlier cases may not wholly foreclose-this case *545 does not present an opportunity to consider that argument further. That is because, as wife points out, husband did not preserve that argument before the trial court. See ORAP 5.45(1) (except for discretionary plain error review, which has not been requested here, appellate court will not consider claim of error that was not preserved in lower court).
In a preservation section of his opening brief, husband asserts that he preserved his second assignment of error by "argu[ing] at trial for a reasonable spousal support award." Husband cites five pages from the trial transcript as support for that assertion.[16] However, as far as spousal support is concerned, those pages reflect only that husband argued to the trial court that he would be unable to pay an equalizing judgment along with spousal support and other debts as wife had proposed; that it was not just and proper in the circumstances to require him to do so; and that the court "will need to make a determination of what [spousal support] is, keeping in mind that [husband] with his obligations has to maintain a standard of living also."[17] Those assertions did not fairly present the trial court with the nuanced and fact-intensive "double-counting" argument that husband makes on appeal.
Moreover, this is not a case in which husband lacked an opportunity to bring his argument to the attention of the trial court. See, e.g. , Schwartz and Battini , 296 Or. App. 870, 875, 440 P.3d 92 (2019). As detailed above, after trial, the court issued a proposed decision, including findings of fact and conclusions of law, in which the court proposed essentially the same distribution of VR's ownership and value and the same award of spousal support as it did in its final judgment. That is, the court awarded ownership of VR to husband, awarded wife half of VR's appraised value of $ 2.8 million in an equalizing judgment, and ordered husband to *546 pay $ 12,500 per month in spousal support to wife based on his expected earnings, which corresponded directly to VR's net income *1169 stream. Although husband objected to that proposed decision, he did not, either in his written objections or at the ensuing hearing, raise the argument that he now makes on appeal-that awarding both (1) the value of VR's income stream as marital property and (2) spousal support based on that income stream constituted unlawful double-counting. Rather, husband focused exclusively on the trial court's refusal to reduce the monthly value of the income stream by $ 14,000, the amount that husband contended went to the payment of VR's business debts.
As a result, wife had no opportunity in the proceedings below to respond to the proposition husband asserts on appeal-that it was error for the trial court to attribute to him the full value of VR's business earnings as income in assessing spousal support and that, instead, the court should consider husband's income to be $ 200,000.[18] Of equal significance, the trial court had no opportunity to consider the question and, if warranted, correct its error. Under those circumstances, the important policy goals underlying the preservation requirement have not been satisfied. John Hyland Const., Inc. v. Williamsen & Bleid, Inc. , 287 Or. App. 466, 472, 402 P.3d 719 (2017) ("[T]he requirement that an appellant have preserved the claim of error that it presents on appeal is a fundamental principle of appellate jurisprudence, serving the important policy goals of fairness to the parties and the efficient administration of justice."); Dew v. Bay Area Health District , 248 Or. App. 244, 252, 278 P.3d 20 (2012) ("To preserve an issue for appeal, a party's explanation of its position [to the trial court] must be specific enough *547 to ensure that the court can identify its alleged error with enough clarity to correct the error immediately, if correction is warranted." (Internal quotation marks omitted.)). Given the absence of any showing that those principles are satisfied here, we conclude that husband's argument that the trial court erred in assessing spousal support based on the full amount of his expected earnings from VR is not preserved.
One final note is warranted in regard to this assignment of error. At oral argument-with different counsel-husband raised another argument as to how the trial court had abused its discretion in ordering him to pay $ 12,500 in spousal support. That, counsel argued, was because, even assuming husband's monthly income is $ 55,000, when the court's spousal support award is considered along with husband's other obligations, including income and payroll taxes, he is left with "essentially no money to service his own personal expenses," a result that is inconsistent with our case law. Although the wording of husband's assignment of error itself suggests that argument-"The award of $ 12,500 per month spousal support is not just and equitable, considering Husband's income, and Husband's other obligations"-and it appears that he preserved that argument in the trial court, husband did not pursue that theory in his opening brief.[19] Indeed, even in husband's reply brief that argument is far from fully developed.[20] Rather, in the context *1170 of his "double-counting" argument, he simply quotes Garza and Garza , 201 Or. App. 318, 329, 118 P.3d 824 (2005), for the proposition that "a spousal support obligation that exceeds the paying spouse's ability to pay is excessive." It was not until oral argument that husband clearly articulated that theory, detailing the obligations ordered by the trial court against his assessed income. That was too late. We do not consider *548 appellate arguments-even if properly preserved-that are made on appeal for the first time during oral argument. Clinical Research Institute v. Kemper Ins. Co. , 191 Or. App. 595, 608-09, 84 P.3d 147 (2004) ("[R]egardless of whether the alternative theory of error was preserved, plaintiff failed to raise it in its opening brief on appeal. We generally will not consider a basis as to why the trial court erred that was not assigned as error in the opening brief but was raised for the first time by way of reply brief. Ailes v. Portland Meadows, Inc. , 312 Or. 376, 380-81, 823 P.2d 956 (1991) ; ORAP 5.45(1)."); see also State v. Jones , 184 Or. App. 57, 60 n. 2, 55 P.3d 495 (2002) ("At oral argument, defendant contended for the first time on appeal that the charged offenses were not of the same or similar character. Because defendant did not raise that issue in his opening brief, we decline to reach it here.").
We turn, briefly, to husband's third assignment of error. He asserts that the trial court erred in setting child support based on an incorrect finding as to husband's income and a spousal support award that was too high. Given that, in resolving husband's other assignments of error, we have rejected husband's premises-that the trial court erred in assessing his income and in determining the amount of spousal support-husband's third assignment necessarily fails as well. Accordingly, we affirm the judgment of the trial court.
Affirmed.

Subject to the Chief Justice's approval, judicial districts may establish panels of reference judges to try civil actions in circuit court. ORS 3.300. The rules that govern that process are set out in ORS 3.300 to 3.321. Under ORS 3.305(1), the parties may request referral of their action to a reference judge on the panel, and the presiding judge must order it. The reference judge's final judgment becomes the judgment of the court. ORS 3.315(6). Accordingly, we refer to the reference judge as "the trial court" or "the court" in this opinion.

The court found wife's gross income to be $ 625 per month from rental income. It ultimately revised that finding to $ 4,845 per month-$ 625 in rental income and $ 4,220 in interest income on the money award. Wife's income is not at issue on appeal.

The court also ordered wife to apply for Social Security disability and PERS disability, noting that "any substantial award of disability payments to her shall be deemed a change in circumstances, and shall allow for a reconsideration of the appropriate amount of Wife's spousal support."

With the court's permission, husband later filed amended objections; this argument, however, remained the same.

In his supplemental memorandum, husband reiterated his argument regarding the unaccounted for debt service and suggested that an appropriate spousal support award would be $ 8,500 per month.

The court also stated that it was
"treating the parties' combined income from VR as if it were husband's alone for three reasons. First, husband historically has exercised de facto complete control over all income from VR, second, all of VR will be allocated to husband under this court's judgment, and third, husband's personal efforts are at least largely responsible for the development and maintenance of that stream of income."

Husband does not argue on appeal that the child support guidelines account for his lack of parenting time by increasing the amount of his monthly obligation, nor does he contend that the trial court overstated wife's burden in meeting the daily needs of "the children," since only one child remains at home.

See ORS 3.315(6) ("Upon receipt of the final written report by the clerk of the court, the referral of the action shall terminate and the presiding judge shall order the judgment contained in the report entered as the judgment of the court in the action."); ORS 3.316(7) ("The judgment of the reference judge entered as provided in subsection (6) of this section may be appealed in the same manner as a judgment of the circuit court in a civil action.").

For example, he argues:
"The trial court concluded that Husband would be able to earn $ 55,000 per month, $ 660,000 per year going forward, an amount which exceeds his best historical year, and exceeds a reasonable average of several years. Even under the 'any evidence' standard, it appears the court misread the data to come to this conclusion." (Emphasis added.)

We also note that the trial court appears to have calculated its spousal support award based on husband's earning capacity being $ 43,500 per month, not $ 55,000. In its proposed decision, the trial court found husband's monthly income to be $ 43,500 and awarded wife $ 12,500 per month in spousal support. Although in its final decision the court found that husband's monthly income was higher-$ 55,000-the court did not correspondingly increase that support award.

Husband also hints at this argument in connection with his first assignment of error. In arguing that the evidence does not support the court's factual finding that husband's income is $ 55,000, he states:
"The court attributes all of the income of [VR] to Husband, as sole owner, combining historical amounts for interest payments, guaranteed payments, and net business income. However, this is a measure of the total income of [VR], and the court also awarded Wife an equal portion of the value of [VR], in dollars, payable by Husband, as a property equalizing award. Wife effectively receives half of the business with payments structured over fourteen years of amortized payments, including interest."

The $ 200,000 figure apparently refers to an estimate of the market value of a chief executive officer's time and work for a business similar to VR that the parties' joint appraiser used in assessing the value of VR.

Wife also responded that husband never raised that argument in the trial court, and that the $ 200,000 market salary figure used for the sole purpose of adjusting the appraisal is "attenuated and wholly unrelated to the facts of this case."

We express no opinion on the correctness of that assertion.

We note that, in addition to the income disparity between the parties, the trial court also relied on other ORS 107.105(1) factors in arriving at its spousal support award, including wife's health and her custodial and child support responsibilities.

Under the Oregon Rules of Appellate Procedure, each assignment of error must "specify the stage in the proceedings when the question or issue presented by the assignment of error was raised in the lower court, the method or manner of raising it, and the way in which it was resolved or passed on by the lower court," ORAP 5.45(4)(a)(i), and set out pertinent quotations of the record where the issue was raised and the ruling was made, ORAP 5.45(4)(a)(ii).

Husband also urged the trial court to fashion a remedy involving the sale of VR. As indicated, on appeal, husband does not contest the trial court's property division.

Husband never suggested to the trial court that $ 200,000 was the correct income amount to use, and, in any event, we are unclear why that would be the case. Even if we were to consider (and agree with) husband's unpreserved, "double-counting" argument, following that argument to its logical conclusion would, it seems to us, lead to a remand for the court to determine, as a matter of fact, the portion of VR's value that represents future earnings-as opposed to other assets-and reassess husband's income based on half of that amount . Indeed, that is the upshot of husband's position. He argues, for example, that, "[b]ecause the business was valued based primarily on its expected future income, and that value was divided between Husband and Wife as part of the property award, the total income of the business should not also be counted as available for Husband to pay support to Wife." (Emphasis added.)

To the extent that husband argued in his opening brief that the trial court's support award exceeded his ability to pay, that argument was fact bound with his contention that the court should have assessed his income to be $ 200,000 annually, or $ 16,667 per month, which we have rejected. Before oral argument, husband never contended that, even assuming a monthly income of $ 55,000, he is unable to pay $ 12,500 in support.

In any event, we generally do not consider arguments for reversal of a trial court's ruling raised for the first time in a reply brief. Belgarde v. Linn , 205 Or. App. 433, 438, 134 P.3d 1082, rev. den. , 341 Or. 197, 140 P.3d 580 (2006).