790　　　　　　　　　May 20, 2026　　　　　No. 448

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Matthew L. POLIZZOTTO,
*Petitioner-Appellant,*

*v.*

Nadia D. SINGH,
*Respondent-Respondent.*

Lane County Circuit Court
19DR19485; A180461

Debra K. Vogt, Judge.

Argued and submitted March 7, 2025.

George W. Kelly argued the cause and filed the briefs for appellant.

Erin E. Gould argued the cause for respondent. Also on the brief was Erin E. Gould, LLC.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

## PAGÁN, J.

Father appeals a judgment ordering enforcement of parenting time for mother and awarding her attorney fees. Father asserts three assignments of error, claiming that the trial court erred by (1) finding that father had committed a violation of parenting time, (2) granting mother's motion to enforce parenting time and declaring her the prevailing party, and (3) awarding mother attorney fees. Father requests *de novo* review. Father claims that the trial court's findings that the designated parent supervisor had resigned were unsupported by the record and that because there was no evidence that the supervisor was unavailable, the court erred when it granted mother's motion to enforce parenting time and awarded her attorney fees. We decline to review *de novo* and subsequently determine that the trial court's decision was supported by evidence in the record. We affirm.

## I.   BACKGROUND

Father's assignments of error exclusively concern the trial court's factual findings. Because we decline *de novo* review, "we are bound by the trial court's express and implicit factual findings if they are supported by any evidence in the record." *Colton and Colton*, 297 Or App 532, 534, 443 P3d 1160 (2019) (internal quotation marks removed).

In January 2020, the parties divorced by stipulated judgment. The dissolution agreement provided joint custody of mother and father's two daughters and 50/50 parenting time. Cooperation between mother and father deteriorated over the following year, which led to incidents on June 3rd and 4th during which mother was arrested and removed from father's property for shouting and being aggressive toward father and father's neighbors, resulting in father filing a motion for immediate danger and temporary custody and parenting time. The court initially granted his motion. Parents went to trial over the order, which resulted in the court dismissing father's order and reinstating the original parenting time agreement. On October 21, 2021, father requested a new temporary emergency order granting him sole custody of the children, claiming that mother had endangered them because she was impaired while driving

and engaged in physical confrontations with her partner. The order was granted and subsequently upheld. Mother and father continued to litigate the modification of the parenting plan, which went to trial in February 2022.

In March 2022, the court issued a supplemental judgment with the following modification of the parenting plan:

- "Mother shall have one hour supervised parenting time visits each week with the children subject to finding 12;"

- "The parenting time shall be supervised by Nichole Brown, with Rich Hursey present for in-person supervised visits;"

- "If at any time, Nichole Brown and Mr. Hursey become unavailable to supervise Mother's parenting time, then Father, in his sole discretion, may choose a different professional organization or individual to supervise the parenting time;"

- "Mother shall strictly comply with and obey all written parenting time rules/guidelines established by Nichole Brown or any other supervisor;"

- "Supervision may be remote."

- "[Mother] is directed to undergo a comprehensive psychological review," and "[o]nce the evaluation has been completed and served, Respondent may file a request for a modification of the Parenting Time Schedule if a modification can not be agreed to by the parties;"

Mother had the first supervised visit on March 22. These visits were on Zoom, which Brown testified was because she did not feel like the children were willing to see their mother in person. Brown's letter to the parties dated May 6 describes the first five Zoom visits as going "fairly well."

However, Brown sent the parties an email dated on May 6 to memorialize how the May 1 visit had gone poorly. The letter described how during the May 1 visit, mother asked the girls about their new therapist, which Brown felt was an inappropriate topic. She tried to get mother to change the subject, but mother persisted, resulting in one of

the girls walking away from the computer and the other typing "x" to Brown, which was a pre-established signal that the children wanted to end the visit. Brown ended the visit with the children and remained on the call with mother to discuss why. Brown claimed that she felt that mother did not believe Brown was an adequate or properly trained supervisor and that she wanted in-person visits.

In a subsequent email dated May 6, Brown communicated to mother and father and their counsel that she did not feel like she could keep supervising based on mother's behavior and attached what she called her final invoice. In an email dated on May 9, father's attorney communicated with mother, stating that mother needed to comply with the terms of the judgment for visits to resume, including submitting to a psychological evaluation and providing supporting documentation to the parties. The email continued to refer to Brown as the visit supervisor.

Visits ceased entirely after May 1. On June 22, mother filed a motion to enforce parenting time, which is the subject of this appeal. Despite mother initiating the enforcement action, visits did not resume. In August, Mother tried re-engaging Brown to set up visits. Father's counsel refused to participate in a planning meeting at that time. Mother and Brown set up a visitation for August 27; however, after some communications back and forth, mother canceled when Brown said that there would be no in-person visit. Over the next few months, mother, mother's counsel, and Sara Rich, a family therapist who was supporting mother, continued to work to set up visitation, resulting in the first visit since May 1, which occurred on November 4, 2022, by Zoom. On November 8, the parties went to trial on mother's motion to enforce parenting time.

At trial, the parties presented different interpretations of Brown's May 6 emails: mother argued that they constituted a resignation that made Brown unavailable as a supervisor, while father claimed that they did not mean Brown was resigning but were statements that Brown just did not know how to proceed with visits based on mother's behavior,

The court made the following relevant findings:

- In Brown's email on May 6, "Ms. Brown resigned as the parenting time supervisor for this family. This is the only logical reading of the email;"

- "Ms. Brown's resignation made her 'unavailable' as the parenting time supervisor."

- "Father is the only person with authority to appoint an alternate parenting time supervisor. Father did not do so. As a result, Mother did not have any parenting time between May 1, 2022, and November 4, 2022;"

- "Father did not intend to appoint an alternate supervisor, nor would he facilitate further parenting time until Mother had completed a psychological evaluation;"

- It was not the court's intent to allow father "to hold all Mother's parenting time in abeyance until she completes a psychological evaluation to a standard determined by his attorney;"

  It was not the court's intent "to make the appointment of a new parenting time supervisor optional on [Father's] part;"

- It was not the court's intent "to allow Mother to have supervised in person visits with the children while the supervisor is not physically present."

The trial court granted mother's motion to enforce. Father was ordered to pay attorney fees. Father timely appealed.

## II.   ANALYSIS

### A.   *Mother's Parenting Time*

Father's first two assignments of error are based on the same evidence and analysis, and so we analyze them together. Father claims that the trial court erred by finding that father violated the parenting time order and subsequently granting mother's motion to enforce. He argues that there was no evidence in the record to support the court's factual findings that (1) Brown resigned in her May 6 email, making her unavailable, and (2) father's failure to appoint a new supervisor was the reason that mother did not have

parenting time until November 4. Because we determine that there is evidence in the record to support the trial court's findings, we affirm.

Father's argument exclusively challenges the trial court's factual findings, which, as we noted above, we are bound by if they are supported by any evidence in the record. *Colton*, 297 Or App at 534.

First, there is evidence in the record that Brown's May 6 emails constituted a resignation that resulted in her being unavailable to supervise future visits. In those emails, she used language such as "I am at a loss as to how I can possibly obviously proceed" and referred to an attached "final invoice." That language was evidence of her unwillingness to continue supervising the visits, and the reference to her invoice as "final" implied that she would not be doing any further work for the family. Additionally, Brown's testimony at trial regarding her availability was equivocal and sometimes contradictory. It was within the trial court's purview to determine how credible it found her.

Father disagrees with that interpretation, stating that that language does not necessarily imply resignation and that the subsequent correspondence with Brown either showed that she had not resigned or that her resignation was so short lived that she was never "unavailable." We are unpersuaded by this argument because the standard of review does not permit us to reweigh conflicting evidence. Father relies on emails sent between the parties on May 9 and 13, which both stated that Brown was still the supervisor, claiming that in light of those emails, the only acceptable finding was that Brown was still available. However, even if the emails from May 9 and 13 *could* have supported a finding that Brown was still available to supervise, the trial court, having heard all the evidence, including the equivocal testimony from Brown regarding whether she was available, found otherwise. Such weighing and interpreting of evidence was properly within the role of the trial court, and we cannot say that its finding was error.

Second, father also claims that it was error for the trial court to find that his conduct was responsible for

mother not seeing the children, especially after she canceled the August 27 visit. We disagree because (1) the fact that mother was ultimately unable to reengage Brown through her own efforts did not relieve father from his obligation to make a visitation supervisor available; and, (2) there was evidence that father withheld parenting time for reasons other than mother's inability to comply with the supervisor's written guidelines.

The trial court did not err in finding that father's conduct was the reason mother did not have the parenting time she was entitled to because setting up parenting time was not solely mother's obligation. The March 16 supplemental judgment did not place the obligation for arranging visits on mother, and moreover, having the exclusive power to appoint a new visit supervisor, father needed to be involved in arranging visits as a practical matter. Father was not relieved of his obligation to make sure mother had her court ordered parenting time when mother's attempts to arrange a supervised visit with Brown in August were unsuccessful. Further, the emails between the parents' counsel and Brown show that father's counsel refused to engage in a meeting to try to arrange that parenting time—evidence that supports the court's finding that father was responsible for mother's lack of parenting time.

Additionally, emails from father's attorney that the court received as evidence repeatedly referred to the need for mother to "strictly comply with and obey all written parenting time rules/guidelines," putting specific emphasis on mother needing to undergo the psychological evaluation required by finding 12 of the judgment before visits would resume. On appeal, father now contends that that was never his position, but the May 9 email from father's counsel stated, "Supervised remote parenting time with Nichole Brown as supervisor will resume when Dr. Singh complies with the directive that she complete a psychological evaluation at her own expense." Furthermore, email exchanges between the parties in August that were admitted into evidence corroborated a lack of willingness by father's counsel to participate in arranging mother's visitation. Father argues that while the May 9 letter from his counsel could be interpreted

to have meant that he was withholding visits until mother underwent a psychological evaluation, his testimony indicated that that was never his intention or understanding. However, our standard of review requires that we uphold the trial court's findings of fact if there is any evidence to support them, and the May 9 and August 15 letters from father's attorney satisfy that requirement.

## B.  *Attorney Fees*

Because we conclude that the trial court did not err in designating mother the prevailing party and properly weighed the ORS 20.075 factors on the record, we affirm the award of attorney fees. We review a fee award subject to ORS 20.075 for abuse of discretion. ORS 20.075(3). A trial court may abuse its discretion if its award is predicated on its erroneous determination of questions of law and fact. *Callen and Callen*, 307 Or App 714, 718, 479 P3d 313 (2020).

Here, father again argues that the facts that the trial court based its findings on were not supported by the record and thus the trial court abused its discretion in designating mother the prevailing party and awarding her attorney fees. As discussed above, we conclude that the trial court's findings underlying its rulings were supported by the evidence. Because we determine that the trial court did not abuse its discretion in awarding attorney fees, we affirm.

Affirmed.